MURRAY BROTHERS and Ward Land Company, a Corporation, v. CARROL L. BUTTLES, Ida M. Buttles, David R. Brockman, Alson Wells, and Kate Wells.

(156 N. W. 207.)

**Vendor — vendee — special assessments — statutes — lien — drainage assessments — incorporated cities.**

1. Chapter 35 of the Laws of 1903, which provides that "as between vendor and vendee, all special assessments upon real property for local improvements shall become and be a lien upon the real property upon which the same are assessed, from and after the 1st day of December, next after such assessments shall have been certified and returned to the county auditor, to the amount so certified and returned, and no more," is applicable to drainage assessments upon country property as well as to property which is benefited by local improvements within the limits of incorporated cities.

**Terms of act — doubtful — legislature — intention — words — parts and provisions — construed as whole — statutes — pari materia — general law.**

2. Where the terms of an act are doubtful, an attempt must be made to give effect to the intention of the legislature, and, in doing so, all parts, words, and provisions of the act must be examined and considered, and, if possible, all parts must be brought into a harmonious whole; and statutes which are *pari materia* should be considered, and an attempt made to harmonize the particular statute with such statutes and with the general law.

**Statutes — system — relating to same class or subject — uniform application.**

3. If statutes are a part of a general system relating to the same class or subject and rest upon the same reason, they should be construed, if possible, so as to be uniform in their application and in the results which they accomplish.

**Lien of general taxes — drains — assessment of benefits — cities — outside of — bonds — pari materia statutes.**

4. Section 2186 of the Compiled Laws of 1913, which provides that the lien of general taxes shall attach on the 1st day of December of each year; chapter 62 of the Laws of 1905, which provides for special assessments in case of city improvements, and §§ 2474 and 2475 of the Compiled Laws of 1913, which provide for the assessment of benefits in the case of drains outside of the limits of incorporated cities, and § 2494 of the Compiled Laws of 1913, which provides for the issuance of bonds in such cases,—are *pari materia*.

**Statutes — repeal of — act — title of — scope of — incorporated cities — country property.**

5. Section 193 of chapter 62 of the Laws of 1905 does not repeal chapter 35 of the Laws of 1903, being § 3743 of the Compiled Laws of 1913, in so

far as such section relates to country drainage assessments and to the liens thereof, since the title of said act of 1905 relates merely to incorporated cities, and country property is not mentioned or included thereon.

Opinion filed January 17, 1916.

Appeal from the District Court of Cass County, *Pollock,* J.

Action to determine the liens of country drainage assessments as between vendor and vendee. Judgment for defendants. Plaintiff appeals.

Affirmed.

*F. G. Kneeland,* for appellant.

*Engerud, Holt, & Frame,* for respondents.

BRUCE, J.   This appeal involves a construction of chapter 35 of the Laws of 1903 (Comp. Laws 1913, § 3743), and its application to special assessments or special taxes for drains located in the body of the county and outside of the corporate limits of cities.   The act in question reads as follows:   "An Act to Provide for the Lien of Special Assessments as between Vendor and Vendee.   Section 1, Special Assessments Shall Become a Lien, When.   As between vendor and vendee all special assessments upon real property for local improvements shall become and be a lien upon the real property upon which the same are assessed, from and after the 1st day of December next, after such assessments shall have been certified and returned to the county auditor, to the amount so certified and returned, and no more.   Section 2. Emergency.   There being no law providing when special assessments shall become a lien on real property as between vendor and vendee, this act shall take effect and be in force after its passage and approval."

The trial court found as its conclusions of law that:   "1. Chapter 35, Laws of 1903, is a general law and refers to local improvements outside as well as within an incorporated city.   2. That the attempted repeal in § 193, chapter 62, Laws of 1905, of all of chapter 35, Laws of 1903, is inoperative in so far as it applies to local improvements outside an incorporated city and in violation of § 61 of the Constitution. 3. That § 4986, Revised Codes of 1905, § 5531, Comp. Laws 1913, defining encumbrances, must be read in connection with the living provisions of chapter 35, Laws of 1903, which fixes the date when encum-

brances with reference to special assessments become a lien as between vendor and vendee as of December 1st. 4. That since there were no drain assessments due at the time the defendant sold the property in question, the unpaid and unmatured instalments of the assessments in question do not constitute a lien or encumbrance upon the property such as were covered by the general warranties found in the deed against encumbrances upon the land. 5. That defendants are entitled to judgment dismissing the plaintiff's action on its merits and for their costs and disbursements to be taxed by the clerk." Practically all of these conclusions are assailed by plaintiff and appellant.

Defendants and respondents contend that chapter 35 of the Laws of 1903 applies to drain taxes outside the limits of incorporated cities; that as to such drains it has never been repealed, and that it should be so interpreted as to make such taxes a lien as between vendor and vendee only as the successive instalments become due, that is, on the 1st of December of each year.

Plaintiff and appellant contends: (1) That the statute has been specifically repealed. (2) That it never had any application to drain assessments or taxes outside the limits of incorporated cities. (3) That if the statute has or had any application to drain taxes, it makes the total amount assessed a lien on December 1st, following the filing of the special tax list with the county auditor, which, in the case before us, would have been on December 1, 1908, regardless of when the instalments became due. Any one of these constructions will result in a reversal of the judgment.

It must be presumed that the act of 1903 was enacted with knowledge on the part of the legislature of the then existing law in relation to special taxes and assessments for drains and other local improvements. 36 Cyc. 1146; Endlich, Interpretation of Statutes, § 182.

Under the laws then existing (see §§ 2792, 2793, 2799, 2801, 2803, and 2804, Rev. Codes 1905, §§ 3717, 3718, 3724, 3726, 3728, and 3729, Comp. Laws 1913) the cost of local city improvements was assessed against the property thereby benefited by a special assessment committee. The assessment was reviewed by the city council, and the assessment list as finally determined was filed in the city auditor's office, and remained there. The total assessment was divided into instalments by the city auditor, payable annually, covering a period of years,

—for water mains, ten years; sewers, twenty years, etc. Each year when certifying to the county auditor the general city tax levy for that year, the city auditor also certified a list of lots assessed for local improvements, and extended against the description of each lot the part of the assessment against such lot falling due December 1st of such year, and no more. The county auditor then extended the amount falling due that year, and "so certified and returned" to him, upon the tax list, which he turned over to the county treasurer, and the collection of such special assessments was then made in the same manner as general taxes are collected. This is a procedure which is still in vogue even after the passage of chapter 62 of the Laws of 1905 (chap. 30, Rev. Codes 1905, chap. 44, Comp. Laws 1913), as § 180 of chap. 62 of the Laws of 1905 (§ 2818, Rev. Codes 1905, and § 3743, Comp. Laws 1913) is an exact copy of the 1903 statute, although § 193 of the act of 1905 expressly repealed chapter 35 of the Laws of 1903, which formerly contained this provision, also chapter 210 of the Laws of 1903, which related to water systems and special assessments therefor in incorporated cities, and chapter 123 of the Laws of 1899, and chapter 28 of the Political Code of the Revised Codes of 1899 (§§ 2108–2343 inclusive), and which related entirely to cities and the problems incident to the government and finances thereof.

Now and at the time of the passage of chapter 35 of the Laws of 1903 (Comp. Laws 1913, § 3743) the procedure in relation to assessments against lands which were benefited by drains and which lay outside of the limits of incorporated cities and villages is and was somewhat different. The procedure is outlined by §§ 1831, 1832, Rev. Codes 1905, and §§ 1457 and 1458, Rev. Codes 1899, which are now contained in §§ 2474 and 2475 of the Compiled Laws of 1913, and under which statutes the board of drain commissioners assesses these taxes against the lands benefited by the drains, and *files* a list of such taxes with the county auditor, who thereupon extends the same upon the tax lists, and collection is then made by the county treasurer. The statute (chap. 39 of the Laws of 1901, § 1849, Rev. Codes 1905, amended by chap. 93 of the Laws of 1907, § 2494, Comp. Laws 1913) provides also that the county commissioners may issue bonds for the cost of the drains for a period not exceeding fifteen years (as the law was in 1908), the time of payment, within certain limits, being left to their discretion.

When bonds are so issued (and they were issued in the case at bar) the total tax is not put on the tax list for one year as provided in § 1831, Rev. Codes 1905, § 2474, Comp. Laws 1913, but the matter is covered by an act which provides that "whenever such bonds shall be issued, the tax hereinbefore provided for shall not be collected all in one year, but shall be divided into as many parts as such bonds have years to run, and one of such parts shall be extended upon the tax lists by the county auditor against the proper parcels of land and property liable to taxation for that purpose . . . and collected in such year, and such fund shall constitute the sinking fund provided by this section." (chap. 39, Laws of 1901; § 1849, Rev. Codes 1905, amended by chap. 93 of the Laws of 1907; § 2494, Comp. Laws 1913.)

The argument of counsel for appellant is, then, that chapter 35 of the Laws of 1903 provides that "as between vendor and vendee all special assessments upon real property for local improvements shall become and be a lien upon the real property upon which the same are assessed from and after the 1st day of December, next, after such assessment shall have been *certified and returned* to the county auditor, to the amount so certified and returned, and no more," and that in the case of special taxes for drains there is no certification to the county auditor, the only act in the nature thereof being when the drain commissioners file their list with such auditor, showing the total amount which each tract of land is liable to pay on account of the drain. When this is done, counsel say, the drain commissioners are through, and there is no certifying to any-one of yearly instalments. The whole record is in the county auditor's office for the inspection of the public. If the county commissioners, however, issue bonds, the county auditor makes a record of their proceedings as one of the duties of his office. Without further direction from anyone, he must extend the yearly instalment year by year upon his books. For convenience, he may, of course, make a division if the total taxes into the yearly payments and enter the amount in a book, but there is no legal requirement to that effect. Counsel points out that as to city assessments, and on the 1st of December of each year, the records of the county auditor will show the amount then due and no more, and that that is the amount which, in the language of the 1903 act, has been "so certified and returned, and no more." The instalments not then returned, he says, are of record in the *city auditor's*

office, and a prospective purchaser has no means of ascertaining from the county auditor's office or any other county office whether there are any instalments of such assessments coming due in the future. On the other hand, he claims, and in relation to drainage assessments, that even if the filing of the list with the county auditor may be held to be a certification thereof, which counsel for appellant denies may be done, even then the tax or assessment certified is the whole amount shown by such list to lie against the property, and not the yearly instalments into which the tax is afterwards divided, representing the number of years the bonds have to run and which are extended upon the tax lists by the county auditor.

We think the distinction is at the most technical, and could never have been intended to be made. The act in question provides that the tax shall become a lien "from and after the 1st day of December next, after such assessments shall have been certified and returned, and no more." It is made to apply to "all special assessments upon real property for local improvements." In the case of assessments for county drains, and when bonds are issued, the tax or main assessment is divided into equal portions which are to be collected each year. The only difference in procedure between city and county improvements lies in the fact that in the case of city assessments, except in cities of under 2,000 inhabitants where the city council orders otherwise (see Rev. Codes 1905, § 2804, Comp. Laws 1913, § 3729), the record of the assessments is kept in the office of the *city* auditor, and that official certifies each year to the *county* auditor the portion of the assessment falling due that year, such certification apparently being necessary because the county auditor has no other source of official information, while in the case of county drainage assessments, the record of the assessments is filed in the office of the *county* auditor by the drainage board as soon as the assessment is completed and the drainage board has no other duties in respect to placing these assessments upon the tax list. To state the case in another way, in the case of city assessments, the *county* auditor, in extending the assessments on the tax lists, acts on the information furnished him year by year by the *city* auditor, while in county drainage assessments he acts upon information furnished him *once for all* by the *drainage board* and kept on file in his own office; but this distinction, except perhaps such as may be based upon the use of the word

"certify" in connection with the return of the city auditor (see Comp. Laws 1913, § 3729), and the word "file" used in connection with the return of the drainage board (Comp. Laws 1913, § 2474), disappears when the auditor of a city of less than 2,000 inhabitants certifies to the county auditor the assessment as a whole; for here, as in the case of country drainage assessments, the *county* auditor each year looks to his own records and files to determine the portion of the assessment to be extended upon the tax list for that year. Comp. Laws 1913, § 3729. The question is, Do the words, "certify and return," which are used in the act of 1903, under examination cover cases where the total tax or assessment is *filed* with the county auditor?

If chapter 36 of the Laws of 1903 is doubtful, the rule is well established that an attempt must be made to give effect to the intention of the legislature. State ex rel. Erickson v. Burr, 16 N. D. 581, 113 N. W. 705; State ex rel. Flaherty v. Hanson, 16 N. D. 347, 113 N. W. 371; Vermont Loan & T. Co. v. Whited, 2 N. D. 99, 49 N. W. 318. We think few would deny that the act either certainly applies to county drainage assessments or else is doubtful.

There is no essential difference as far as the property owner is concerned between a general tax and a special assessment, and there is no essential difference between a special assessment for improvements within an incorporated city and a special assessment for drains which are constructed outside of the limits thereof. Each is an exercise of the taxing power, and, except as to the area covered, the limitation of the amount to the benefits conferred and the collection of interest and penalties, has the same characteristics as any general property tax. See Rolph v. Fargo, 7 N. D. 647, 42 L.R.A. 646, 76 N. W. 242; State ex rel. Moore v. Furstenau, 20 N. D. 540, 129 N. W. 81; Hackney v. Elliott, 23 N. D. 373, 137 N. W. 433; State ex rel. Viking Twp. v. Mikkelson, 24 N. D. 175, 139 N. W. 525.

Such being the case, it is certainly a matter of public convenience that there should be uniformity as to the collection and liens of all of these taxes, and there can be no doubt that it was the intention of the legislature that this should be the case. It certainly cannot have been the intention of the legislature that a vendor of real estate upon which a city special assessment has been levied should not be liable for more than one year's instalment of that assessment, and that a vendor of

farm lands which has been assessed for the construction of a drain for which bonds have been issued, and which is to be paid for in yearly instalments, and the vendor of city property in cities of less than 2,000 inhabitants where the entire assessment has been certified to the county auditor at one time, would be liable for the whole assessment. Why, we ask, should a distinction be made between cities of less than 2,000 inhabitants and cities of more, or between city property and farm lands? We do not believe that the legislature has evidenced any such intention. The general taxes become a lien upon real property upon the 1st day of December of each year. Comp. Laws 1913, § 2186. Why should not special assessments become so also?

The rules for arriving at the legislative intention are well established. All parts, words, and provisions of the act must be examined and considered, and, if possible, all parts must be brought into a harmonious whole; and it is the duty of the courts to, "if possible, give effect to the manifest intent of the legislature, as disclosed by the provisions of the whole act, although in doing so it becomes necessary to disregard the strict letter of the law in some of its provisions. State ex rel. Flaherty v. Hanson, and Vermont Loan & T. Co. v. Whithed, supra; Henry v. Perry Twp. 48 Ohio St. 671, 30 N. E. 1122.

The title of the act may be considered as a means for arriving at that intention. McKenzie v. Mandan, 27 N. D. 546, 147 N. W. 808. Not only this, but the policy which is announced in statutes which are *pari materia* should be considered, and an attempt made to harmonize the particular statute with the general law. Vermont Loan & T. Co. v. Whithed, supra; Sutherland Stat. Constr. 316. If "statutes are parts of a general system relating to the same class of subjects, and rest upon the same reasons, they should be so construed, if possible, as to be uniform in their application and in the results which they accomplish." Sheldon v. Boston & A. R. Co. 172 Mass. 180, 51 N. E. 1078. Courts will be astute to read the law in such a way as to give a uniform and harmonious body of law upon the subjects with which the various statutes deal. People ex rel. Wood v. Lacombe, 99 N. Y. 50, 1 N. E. 599.

These rules are general and well established, and they have been uniformly applied in relation to statutes which deal with the subject of taxation, where, perhaps, more than in any other classes of cases the state is interested in uniformity. See United States v. Collier, 3

Blatchf. 325, Fed. Cas. No. 14,833; Kansas P. R. Co. v. Wyandotte County, 16 Kan. 587; Burke v. Monroe County, 77 Ill. 610; Hannibal & St. J. R. Co. v. Shacklett, 30 Mo. 550.

If we apply these rules of construction to the statute before us, we have no question that the words, "special assessment," which are used in § 1 and in the title of chapter 35 of the Laws of 1903, were intended to cover country drainage as well as city special assessments; that the word "certified," which is therein used, was intended to include "filed" under the circumstances under which the list of drainage assessment taxes are filed with the county auditor; and that when in that act it says that, "from and after the 1st day of December next, after such assessments have been certified and returned to the county auditor to the amount so certified, and no more," there shall be a lien, etc., it does not mean the full amount of the drainage taxes when bonds are issued, but only the part due each year. It is a mistake, indeed, to say that in such cases there is no certification. In the case of city assessments, the city auditor, it is true, certifies to the county auditor each year only the assessment or tax to be paid that year, and keeps within his own records the data on which the future assessments must be certified. But the office of the city auditor is a permanent office with permanent records, while that of a county drainage commission is not, and it is but natural that, in the latter case, a slightly different procedure should be adopted. Though the procedure is different, there is a certification none the less. The drainage board certifies to the county auditor the assessment as a whole, and it does this knowing that it is its duty to divide it into as many parts as there are years to the life of the bonds which are issued, and to see to the yearly collection of such parts. In effect and in all practical common sense the drainage board certifies to the county auditor the total tax or assessment divided into the number of years that the bonds are to run; and it is no straining of language to say that when it certifies to the assessment and files it with the county auditor with all of the records of its office relating thereto, and of which thereafter he is to be the sole custodian, that it practically certifies to the auditor the amounts which are to be yearly collected. It is perfectly clear to us, also, that if we construe the words, "special assessment," where they occur both in the title and in the body of chapter 35 of the Laws of 1903, to apply to county drainage taxes and assessments, and to assess-

ments that are levied in the incorporated cities for local improvements, we are not giving any unusual meaning to the words which are used. The terms, "special taxes" and "special assessments," indeed, have been quite generally interchanged; and it is to be remembered that the statute in question says *all* special assessments, and does not limit the term in any way. Special assessments, indeed, are merely special taxes. Rolph v. Fargo, 7 N. D. 647, 42 L.R.A. 646, 76 N. W. 242.

Section 3728 of the Complied Laws of 1913 says that *special assessments* shall be and remain a paramount lien on the property benefited, and have a priority over all liens except *ordinary* taxes. Surely the term "special assessments" as used in this section must include county drainage taxes or assessments as well as urban. If so construed in this section, why should it not be so construed in the section that is before us?

We think that few can doubt that it has been the purpose of the legislature that the lien of taxes shall be as uniform as possible. Section 2186, Comp. Laws 1913, provides that the lien of general taxes shall attach on the 1st day of December of each year. This statute, and those providing for the liens of special assessments both for urban and country improvements, are, we believe, all *pari materia,* and must be construed together, and as promotive of and declaratory of a common and harmonious purpose. We do not believe that it could ever have been the intention of the legislature that, as between vendor and vendee, the vendee of city property should take such property subject to the general tax lien and special assessment liens from and after December 1st, but that the vendee of country property should hold such property subject to the general tax lien, but free and protected under the general covenants of the deed from the liens of all special assessments for drains, which would be the case if we either hold that chapter 35 of the Laws of 1903 was not, in any event and in the first instance, intended to be applicable to country drainage assessments, or that it had been repealed in so far as the county assessments were concerned by the repealing clause in the city and villages act. Neither do we believe that it was the intention of the legislature that the vendor of country property should, in such a case, be liable during the first year, and under the general covenants of his deed, for the total amount of the assessment where bonds had been issued and the payment of the same spread over a series of years.

If once we concede, as we must, that chapter 35 of the Laws of 1903 was originally intended to apply to country drainage assessments as well as to those for city improvements, we have no hesitation in answering in the negative appellant's contention that the same was repealed by § 193 of chapter 62 of the Laws of 1905. This act, it is true, recopied chapter 35 of the Laws of 1903, and incorporated it within itself, and having done this, repealed chapter 35 of the Laws of 1903 as being no longer necessary. This repeal, however, must be construed to repeal the chapter only in so far as the matter was covered by chapter 62 of the Laws of 1905, that is to say, in so far as it was applicable to cities. Any other construction, indeed, would make the repealing statute altogether unconstitutional, as if applicable to country drains, the subject-matter is in no way foreshadowed by the title. The title of the act is: "An Act for the Organization and Government of Cities and to Provide for the Limitation of Actions to Vacate Special Assessments Heretofore Made." We hold that § 193 of chapter 62 of the Laws of 1905 is unconstitutional in so far as it repeals chapter 35 of the Laws of 1903. This construction, however, in no way affects the act as far as cities are concerned, as chapter 35 of the Laws of 1903 is re-enacted in the act of 1905.

The judgment of the District Court is affirmed.