Orville J. HALVERSON and Beulah R. Halverson, Plaintiffs and Respondents,

v.

Leo J. BOEHM and Johnny Ruth Boehm, Defendants and Appellants.

No. 7461.

Supreme Court of North Dakota.

March 31, 1956.

Kelsch & Scanlon, Mandan, for appellants.

Lord, Ulmer & Murphy, Mandan, for respondents.

BURKE, Chief Justice.

The gist of this action is alleged fraud. Plaintiffs averred that, during negotiations for the purchase of certain real property from the defendants, the defendants falsely represented that the property was "free and clear of all liens and encumbrances of any nature whatsoever, save and except a certain mortgage held by the First National Bank of Mandan, when in truth and in fact "there were special assessments assessed against said described real estate by the City of Mandan for local improvements in the total amount of $1,085.95 which were a charge and encumbrance upon said described real estate"; that in reliance upon said representations, plaintiffs purchased the said property and that by reason of defendants' fraud suffered damages in the amount of $1,085.95.

In their answer the defendants alleged that in the preliminary contract for the sale of the property they agreed with the plaintiffs that upon payment of the purchase price, they would convey to the plaintiffs by warranty deed a merchantable title to the property, free and clear of all encumbrances except a certain mortgage held by the First National Bank of Mandan; that upon payment of the purchase price they did convey the property by a deed which warranted that the property was free of all encumbrances except the mortgage to the First National Bank of Mandan; that during all the time the negotiations between the plaintiffs and the defendants were taking place, no part of the special assessments which plaintiffs alleged were an encumbrance against the property had been certified and returned in any amount by the City of Mandan to the County Auditor of Morton County and that said special assessments did not constitute liens or encumbrances upon the property sold at the time of any of the negotiations or transactions between plaintiffs and the defendants. Defendants also denied making any false representations to plaintiffs and asked that the action be dismissed. The issues in the action were tried to a jury. After both sides had rested, defendants moved for a directed verdict. This motion was denied. The jury returned a verdict in favor of the plaintiffs. Before the entry of judgment, defendants moved for judgment notwithstanding the verdict. This motion was also denied and judgment against the defendants was entered. The defendants have appealed from the judgment. They have specified as error, the denial of the motions for a directed verdict and for judgment notwithstanding the verdict and the refusal of the trial judge to give a requested instruction.

The issue raised by the motions for a directed verdict and for judgment notwithstanding the verdict is the sufficiency of the evidence to sustain the verdict. Under the pleadings the issues were clearly defined. Plaintiffs alleged that defendants had falsely represented that there were no liens and encumbrances against the property except a certain mortgage when in truth and in fact there were outstanding unpaid special assessments which were a lien and encumbrance against the property. The defendants admitted that they represented to the plaintiffs that there were no liens or encumbrances against the property except the mentioned mortgage and so warranted in the deed they gave them. They admitted that there were uncertified unpaid special assessments in the sum alleged by the plaintiff entered upon the books of the City of Mandan but alleged that as between vendor and vendee such assessments were not a lien or encumbrance upon the property because they had not been certified to the County Auditor of Morton County.

The testimony of the plaintiffs, however, was to the effect that the defendants had represented that there were no special assessments remaining to be paid with respect to this property. The defendants denied such statements. The evidence was thus more general than the pleadings. No objection was made that the proof varied materially from the pleadings and the case was submitted to the jury upon the issues arising under the evidence. The testimony of the plaintiffs permits a legitimate inference that defendants represented to the plaintiffs that there were no unpaid special assessments, certified or uncertified,

against the property and therefore it is sufficient to sustain the verdict. It follows that the motions for a directed verdict and for judgment notwithstanding the verdict were properly overruled.

Error was also specified upon the trial judge's refusal to give a requested instruction which was as follows:

"The court instructs you that the special assessments against the property involved in this action which had not been certified and returned to the County Auditor of Morton County, and did not appear on the books and records of the County Auditor of Morton County, May 3, 1953, were not encumbrances against the lands sold by defendants to the plaintiffs, and conveyed by the defendants to the plaintiffs by deed dated May 3rd, 1952."

Section 40-2403 NDRC 1943 provides:

"As between a vendor and vendee, all special assessments upon real property for local improvements, from and after the first day of December after the assessments have been certified and returned to the county auditor, shall be and become a lien upon the real property upon which the same are assessed in the amount certified and returned, and no more."

This statute was originally enacted as Chapter 35, Laws of N.D.1903. It was enacted as an emergency measure and carried an emergency clause which read as follows:

"There being no law providing when special assessments shall become a lien on real property as between vendor and vendee, this act shall take effect and be in force after its passage and approval."

Prior to the passage of this act, the laws of this state provided:

" * * * such assessment, with interest accruing thereon, shall be a paramount lien upon the property within the limits of the sewer improvement district, in which such improvement

is made and upon which such assessment is levied from the time such assessment list is approved by the city council, and shall remain a lien until fully paid * * *." Laws of N.D. 1899, Chapter 41, § 10, Chapter 42, § 3.

In all of the laws in force in this state prior to the enactment of Chapter 35, Laws of N.D.1903, the lien of special assessments was generally effective as to all persons from the time of the approval of the assessment list by the governing body of the assessing municipality. No exception was made with respect to the effectiveness of the lien as between vendor and vendee. In the opinion of the Legislative Assembly in 1903 this situation constituted an emergency and to meet this emergency they adopted Chapter 35, supra, which provided that special assessments should become a lien as between vendor and vendee on December 1st, following their certification to the county auditor. The language of the statute clearly implies that as between vendor and vendee, special assessments are not lien until December 1st, following such certification. Furthermore, the circumstances in which Chapter 35, supra, was adopted and the wording of the emergency clause clearly demonstrate that the intent of the legislature was to except those who stood in the relationship of vendor and vendee from the effect of the provision that special assessments should be a paramount lien from the time of their approval by the governing board of a municipality.

The question of whether uncertified special assessments constituted liens or encumbrances such as were covered by a general warranty in a deed against encumbrances, was before this court in Murray Bros. v. Buttles, 32 N.D. 565, 156 N.W. 207. In that case it was held that as between vendor and vendee such assessments were not encumbrances and that therefore a vendor was not liable for uncertified assessments under a general warranty against encumbrances.

It appears therefore, that the requested instruction correctly stated the

law of this state. Since the preliminary contract between the parties provided that the defendants would convey to the plaintiffs a title which was free of all encumbrances except a certain mortgage, and since the deed delivered by the defendants to the plaintiffs contained a warranty against encumbrances, and since at the time of these transactions between the parties, there were no unpaid special assessments against the property which had been certified to the county auditor, the instruction was pertinent to the issues in the case. The instruction should have been given and it was prejudicial error to refuse to give it. The judgment of the district court is therefore reversed and a new trial granted.

MORRIS, SATHRE and JOHNSON, JJ., concur.

GRIMSON, Justice (dissenting).

I agree with the first part of the opinion of Chief Justice BURKE, and that the "testimony of the plaintiffs permits a legitimate inference that the defendants represented to the plaintiffs that there were no unpaid special assessments certified or uncertified against the property, and that, therefore, it is sufficient to sustain the verdict. It follows that the motions for directed verdict and for judgment notwithstanding the verdict were properly overruled." I cannot, however, agree with the holding that the requested instruction should have been given and that for the failure to do so a new trial should be granted. To support my position I will briefly review the facts.

The plaintiffs were newcomers to this state. Mr. Halverson was a veterinarian in the employ of the United States Department of Agriculture, and was sent to Mandan, North Dakota. His work, however, was up along the Canadian boundary and he was home only on weekends. When they first came, they, with their two boys, 5 and 7 years of age, had to live in a tourist camp. Mrs. Halverson found a house built and occupied by the defendants, Mr. and Mrs. Boehm. Mr. Boehm was in the business of building and selling houses. When Mr. Halverson returned home that weekend, he and his wife visited the Boehm house and a discussion of the buying of the premises was had. The price asked by the defendant, Mr. Boehm, was $17,500. Mr. Boehm told Mr. Halverson of a mortgage on the premises which plaintiffs were willing to assume. Plaintiff, Mr. Halverson, asked if there was anything else against the property and was assured there was not. He had had some experience with special assessments in connection with a house he formerly bought at Olympia, Washington. This Boehm property had water and sewer connections and, a double driveway. Usually such improvements are paid by special assessments payable over a period of years. Mr. Halverson seemed very anxious to find out if there were any such unpaid assessments against the property. Whether he would buy the property at the price asked, $17,500, might have depended on that. He repeatedly asked Boehm about it. Boehm admits he did not tell Mr. Halverson although he knew there were outstanding, special assessments. The plaintiffs claim that depending on the assurance that there were no unpaid assessments against the property they next day entered into the contract and bought the premises.

At first thought it might seem that plaintiffs should, themselves, have investigated the matter of incumbrances. They were strangers and did not know how to do that. They were in a hurry to find a home in which to live. They had a right to rely on the assurance of the seller.

This court long ago adopted the principle that "ordinarily, one who buys property has a right implicitly to rely upon representations of the seller; * * *." Fargo Gas & Coke Co. v. Fargo Gas & Electric Co., 4 N.D. 219, 59 N.W. 1066, 37 L.R.A. 593; Warne v. Finseth, 50 N.D. 347, 195 N.W. 573; Moon v. Martin State Bank, 59 N.D. 352, 230 N.W. 11. If the representations induce action it is "immaterial that the means of knowledge are open to the complaining party, or easily available to him, and that he may ascertain the truth by proper inquiry or an investigation." 23

Am.Jur., Fraud and Deceit, Sec. 161, p. 970. This is true "even though the fact may be recorded." * * * "The recording acts are not intended as a protection to those who make false representations." A.L.I. Restatement of the Law, Torts, Vol. 3, Sec. 540, p. 93.

Shortly after the purchase plaintiffs found that there were uncertified, special assessments against the property in the amount of $1085.95. They then commenced this action, not under the warranty deed for the payment of those uncertified special assessments, but for damages based on the misrepresentations and fraud which they claim led them into the contract. They had a right to do that. 92 C.J.S., Vendor and Purchaser, § 543, p. 540. The contract does not shield the wrongdoer. Neither are the false representations that induced the contract merged in it. 37 C.J.S., Fraud, § 63, p. 352; Sellars v. Adams, 190 Ky. 723, 228 S.W. 424.

It is claimed on behalf of the defendants that Mr. Boehm's representations as to there being no unpaid assessments against the property were true because, they say, that uncertified assessments are not incumbrances as between vendor and vendee under Section 40–2403 NDRC 1943, which reads as follows:

"As between a vendor and vendee, all special assessments upon real property for local improvements, from and after the first day of December after the assessments have been certified and returned to the county auditor, shall be and become a lien upon the real property upon which the same are assessed in the amount certified and returned, and no more."

However, Section 3728, C.L.1913, now Section 40–2401 NDRC 1943 provides for a general lien for special assessments as follows:

"A special assessment, together with all interest and penalties which accrue thereon, shall be and remain a lien upon the property upon which the assessment is levied from the time the assessment list is approved by the governing body until the assessment is paid fully. Such lien shall have precedence over all other liens except general tax liens and shall not be divested by any judicial sale. * * *"

There is no specific provision in Section 40–2403 for the release of the vendor from that lien. Even if that were intended the lien is effective as to everybody else. Nor does Section 40–2403 propose to amend Section 40–2401. The case of Murray Bros. v. Buttles, 32 N.D. 565, 156 N.W. 207, is cited. That was a suit brought upon the warranty in a deed for unpaid special assessments. The court held they could not be recovered under the warranty. That is much different from the situation in the case at bar which is brought for damages caused by false representation. A careful study of the Murray Bros. case fails to disclose any intent of the court to hold that Section 40–2403 amends Section 40–2401. The inference is rather that the court held those sections still in force unchanged. There is no statement in the syllabus nor in the opinion itself that the vendor is excepted from the general lien of special assessments. Section 40–2401, supra. The main determination in that case was that the laws governing special assessments for city improvements applied also to rural improvements.

Section 40–2403 NDRC 1943 is but an addition to Section 40–2401 providing the time when the vendee takes over the payment of the general lien after the purchase of the property but it does not prevent the vendor and vendee from taking the unpaid assessments up for consideration when they agree on the price and make the deal. That is perfectly legal and logical for them to do. That seems to be what Mr. Halverson was trying to do. He wanted to know what incumbrances there were against the property. Defendant told him about the mortgage. Plaintiff, Mr. Halverson testified: "I asked him (the defendant, Mr. Boehm) about insurance and anything against the place, any assessments. He said they were paid * . * * I asked him if there were any liens out or assessments. He said they

were all paid. * * * I asked Mr. Boehm definitely as to any assessments against that house and he said they were all paid. He said that (the mortgage) was all there was, the house would be free of anything." Defendant, Mr. Boehm, testified on cross examination: "Q. You knew, did you not, at the time of the negotiations for the sale, that there were special assessments against the house? Ans. Yes, I did. * * * Did you mention to either of the Halversons the unpaid balance of these special assessments? Ans. I told them—(Question read by reporter), No. * * *" Mr. Halverson's questions to the defendant, Mr. Boehm, were not limited to assessments that would become due as between him and the defendant. He wanted to know about all incumbrances against the property. He repeatedly asked specific questions as to whether there were any assessments against the property. That would include special assessments levied by the City of Mandan against those lots for the improvement on them. Section 40–2401 NDRC 1943. Certainly such assessments were a lien against the property for which the owner was liable whether they were liens against the vendor after the property was sold or not. Common sense tells us that those assessments were still incumbrances against the property notwithstanding Section 40–2403 NDRC 1943, and the Murray Bros. v. Buttles case. Whoever owns the land will have to pay those assessments just as he has to pay any mortgage against the land. They were incumbrances against the land at the time the representations were made by Mr. Boehm whether or not they were liens as between the vendor, Boehm, and the vendee, Halverson.

The requested instruction reads as follows:

"The court instructs you that the special assessments against the property involved in this action which had not been certified and returned to the County Auditor of Morton County, and did not appear on the books and records of the County Auditor of Morton County, May 3, 1953, *were not encumbrances against the lands sold by defendants to the plaintiffs, and conveyed by the defendants to the plaintiffs by deed dated May 3, 1952.*" (Emphasis supplied.)

It will be noted that the court is requested to instruct the jury that all special assessments that had not been certified to the County Auditor "were not incumbrances against the lands sold by defendants to plaintiffs by deed dated May 3, 1952". Clearly that was an error. Even if the defendants were by Section 40–2403 NDRC 1943, excepted from the general assessments provided by Section 40–2401, such assessments were still a lien against the property effective to all other persons. They are an incumbrance that the owner will have to pay. They were certainly included in the assessments which plaintiff, Halverson, was inquiring about and which he understood defendants represented as all paid. Not only does the instruction fail to take them into consideration but also definitely excludes them as encumbrances against the property. Such instruction was clearly erroneous. The court committed no error in refusing to give it.

As the Chief Justice says, the evidence was sufficient to sustain the verdict. In my opinion the requested instruction was erroneous under the facts of this case and was correctly denied. I believe, therefore, the judgment of the district court should be affirmed.