CITY OF SOUTHWEST FARGO URBAN RENEWAL AGENCY, a public body, corporate and politic, Plaintiff and Respondent,

v.

Edmund L. LENTHE et al., Defendants, Marvin A. Emery et al., Defendants and Appellants.

CITY OF SOUTHWEST FARGO URBAN RENEWAL AGENCY, a public body, corporate and politic, Plaintiff and Respondent,

v.

R. V. POWERS et al., Defendants, R. V. Powers, Defendant and Appellant.

CITY OF SOUTHWEST FARGO URBAN RENEWAL AGENCY, a public body, corporate and politic, Plaintiff and Respondent,

v.

Jacob M. SCHMIERER et al., Defendants, Wallace A. Beaton et al., Defendants and Appellants.

Nos. 8370–8372.

Supreme Court of North Dakota.

March 2, 1967.

Rehearing Denied March 30, 1967.

Nilles, Oehlert & Nilles, Fargo, for defendants and appellants.

Ralph B. Maxwell, West Fargo, for plaintiff and respondent.

E. T. Conmy, Sr., Fargo, for defendant and respondent City of Southwest Fargo.

ERICKSTAD, Judge.

Three separate condemnation proceedings initiated by the City of Southwest Fargo Urban Renewal Agency were combined for trial. Following the verdicts of the jury separate judgments were entered in each proceeding. No appeals were taken from the judgments. Each judgment provided that the Urban Renewal Agency acquired title "in fee simple absolute as set forth in the complaint of the plaintiff, free and clear of all liens and encumbrances, including liens for taxes and special assessments."

After the entry of the judgments the Urban Renewal Agency deposited with the Clerk of the District Court of Cass County the amounts of the verdicts. Thereafter, on February 26, 1963, the appellant landowners moved that the district court issue its order distributing the moneys on deposit with the clerk of the district court to those entitled to them. Pursuant to a stipulation entered into by the Urban Renewal Agency, the City of Southwest Fargo, and the appellant landowners, the district court on March 12, 1963, ordered the clerk to disperse all of the funds held by the clerk except those amounts which represented the amount of the unpaid special assessments claimed by the City of Southwest Fargo.

By a number of orders dated June 5, 1963, the district court ordered that the funds held by the clerk of the district court in sums of the unpaid special assessments on the various parcels of land condemned be dispersed by the clerk to the City of Southwest Fargo. It is from these orders that the landowners Wallace A. Beaton, Violet F. Beaton, Alfred R. Tollefson, Elaine B. Tollefson, Marvin A. Emery, Berthold E. Sackman, Anita Sackman, Kenneth W. Crooks, Dorothy E. Crooks, and R. V. Powers have appealed.

The issue before us is whether the trial court was correct in deducting from the compensation awarded the landowners the amount of the uncertified and unreturned special assessments levied against the property.

Three statutes are pertinent in a consideration of this question:

40-24-01. Lien of special assessment —Attaches on approval of assessment list—Subject only to general tax lien.— A special assessment, together with all interest and penalties which accrue thereon, shall be and remain a lien upon the property upon which the assessment is levied from the time the assessment list is approved by the governing body until the assessment is paid fully. Such lien shall have precedence over all other liens except general tax liens and shall not be divested by any judicial sale. * * *

40-24-02. Special assessments when due and payable—Interest.—All special assessments levied under the provisions of this title shall become due and payable ten days after they have been approved by the governing body and thereafter shall bear interest at a rate of not exceeding seven per cent per annum on the total amount thereof remaining from time to time unpaid.

40-24-03. Lien between vendor and vendee of special assessments.—As between a vendor and vendee, all special

assessments upon real property for local improvements, from and after the first day of December after the assessments have been certified and returned to the county auditor, shall be and become a lien upon the real property upon which the same are assessed in the amount certified and returned, and no more.

North Dakota Century Code.

The amendments made in 1965 to §§ 40–24–02 and 40–24–03 have no bearing on this appeal.

It is the contention of the landowners that they are the vendors and that the Urban Renewal Agency is the vendee and that, accordingly, § 40–24–03 applies, so that they as vendors are not liable for the payment of the uncertified and unreturned special assessments.

The trial court pointed out in his memorandum decision that it is undisputed by the parties that the unpaid special improvement assessments arose out of certain improvements made in the city, which were completed between October 1, 1959, and October 1, 1960, and that the assessment list was approved and confirmed by the governing body of the city on December 7, 1959, as shown by the affidavit of J. M. Dahle, Auditor of the City of Southwest Fargo.

Applying §§ 40–24–01 and 40–24–02, the trial court concluded that the special assessments became a lien upon the property on December 7, 1959, and became due and payable ten days thereafter, and that since the condemnation of the various parcels did not take place until 1963, the unpaid special assessments were liens upon the various parcels of land and payable out of the respective condemnation awards.

The trial court, referring to 45 A.L.R.2d 529, acknowledged that there was authority to support the contentions of the landowners, but in rejecting that authority described the authority which was to the contrary as being respectable.

■ We have carefully reviewed the authority referred to in the trial court's memorandum decision, which is relied on by both the condemning agency and the City of Southwest Fargo, as well as the authority referred to by the landowners in their briefs and have come to the conclusion that a condemnation proceeding is a compulsory sale wherein the landowner is the involuntary vendor and the condemning agency is the vendee, and thus that § 40–24–03 applies to a condemnation proceeding. The application of that section to this case requires a reversal of the trial court's orders.

This court has in effect construed § 40–24–03 in Halvorson v. Boehm, 76 N.W. 2d 178 (N.D.1956), and an earlier statute which had similar provisions in Murray Bros. v. Buttles, 32 N.D. 565, 156 N.W. 207. Neither of those cases involved condemnation proceedings; we believe, however, that they are helpful in determining the basic issue in this case.

In *Murray Bros.* this court affirmed the trial court's holding that unpaid and unmatured installments of county drain assessments did "not constitute a lien or incumbrance upon the property such as were covered by the general warranties found in the deed against incumbrances upon the land."

In construing § 40–2403, N.D.R.C. of 1943, this court discussed its predecessor, Chapter 35 of the 1903 Session Laws, as follows:

In all of the laws in force in this state prior to the enactment of Chapter 35, Laws of N.D.1903, the lien of special assessments was generally effective as to all persons from the time of the approval of the assessment list by the governing body of the assessing municipality. No exception was made with respect to the effectiveness of the lien as between vendor and vendee. In the opinion of the Legislative Assembly in 1903 this situation constituted an emergency and to meet this emergency they adopted

Chapter 35, supra, which provided that special assessments should become a lien as between vendor and vendee on December 1st, following their certification to the county auditor. The language of the statute clearly implies that as between vendor and vendee, special assessments are not lien until December 1st, following such certification. Furthermore, the circumstances in which Chapter 35, supra, was adopted and the wording of the emergency clause clearly demonstrate that the intent of the legislature was to except those who stood in the relationship of vendor and vendee from the effect of the provision that special assessments should be a paramount lien from the time of their approval by the governing board of a municipality.

Halvorson v. Boehm, 76 N.W.2d 178, 180 (N.D.1956).

The only question, therefore, that these cases leave open is whether § 40–24–03, N.D.C.C., should apply in the case of a condemnation proceeding. As we have earlier stated, we have concluded that the section does apply.

In reaching this conclusion we follow in the footsteps of Minnesota, Oklahoma, and Washington, in Independent-Consolidated School Dist. v. Waldron, 241 Minn. 326, 63 N.W.2d 555; Allen v. Henshaw, 197 Okl. 123, 168 P.2d 625; and Bethany Presbyterian Church v. City of Seattle, 154 Wash. 529, 282 P. 922.

In *Independent-Consolidated* the Minnesota Supreme Court in 1954 held that a condemnation proceeding created a grantor-grantee relationship. The court said:

Under statutes of other states in which time of attachment of tax liens depends on the existence of a grantor-grantee relationship, such a relationship was found to exist between a devisor and a devisee, Commr. of Int. Rev. v. Plestcheeff, 9 Cir., 100 F.2d 62, and between the assignee for benefit of creditors of the landowner and one to whom he conveyed the land. Carey v. Foster, 7 Wyo. 216, 51 P. 206.

In construing a statute almost identical with M.S.A. § 272.31, the supreme court of Washington held that the condemnation of land did create a grantor-grantee relationship between the condemnor and the owner. Bethany Presbyterian Church v. City of Seattle, 154 Wash. 529, 282 P. 922. * * *

* * * We therefore conclude that as between the grantor and the grantee the taxes here were imposed after the filing of the petition on November 26, 1952; that in such a case the legislature intended that they should not be borne by the landowner; and that for that reason they do not constitute a lien on the award made for taking the land.

Independent-Consolidated School Dist. v. Waldron, 241 Minn. 326, 63 N.W.2d 555, 559–560.

In arriving at the conclusion that the general taxes at issue therein did not constitute a lien on the condemnation award, the Minnesota court emphasized that real estate taxes do not constitute a personal obligation of the landowner but are merely a lien in favor of the state on the land only; that the duration and extent of such a lien is controlled exclusively by statute; that generally tax statutes are to be construed strictly against the taxing authorities; and that the statute suggested nothing to indicate that the legislature intended the lien for the taxes to extend not only to the land but also to an award made for its condemnation.

We believe that similar reasoning could be applied to the special assessments uncertified and unreturned involved in this case, and that, applying said reasoning, we must reverse the trial court's order.

Included among the cases relied on by the trial court is that of United States v. 3 Parcels of Land in Woodbury Co., Iowa, 198 F.Supp. 529 (N.D.Iowa 1961). In that case Judge Graven said:

In the conventional vendor-purchaser situation, it makes no difference to the

taxing authority who pays the real estate taxes on a tract of land as that authority may look to the land for the satisfaction of its lien irrespective of the relative obligations of the vendor and purchaser inter sese. A purchaser who is affected by the enforcement against his property of a tax lien which his vendor owed him the duty to pay has rights against his vendor under Section 445.30. He has, however, no right to a release of the lien by the taxing authority. In the present case the fund paid into court by the United States stands in place of the land. It would seem that the taxing authority in enforcing its tax lien should stand in the same relationship to that fund as it did to the land and it would seem only just that since the security of the taxing authority for the payment of taxes due it is not affected by the vendor-purchaser statute (Section 445.30) in the conventional vendor-purchaser situation its security for the payment of the taxes should not be prejudiced because of the condemnation of the land. It was heretofore noted that Woodbury County cannot now enforce any lien against the condemned land for the taxes in question because it has passed into the ownership of the United States. The former owner is not personally liable for the payment of those taxes. Therefore, if those taxes are not payable out of the fund in the registry of this Court, those taxes cannot be collected and the public revenue would suffer accordingly.

United States v. 3 Parcels of Land in Woodbury Co., Iowa, supra, 198 F.Supp. 536–537.

It appears from that statement of the court that the controlling reason for holding that the Iowa vendor-purchaser statute (which is equivalent to our vendor-vendee statute) did not apply to the condemnation of the land by the United States, was that the lien could not be enforced against the United States.

It has been similarly argued in this appeal by the Urban Renewal Agency and the City of Southwest Fargo that the Urban Renewal Agency is exempt from the payment of special assessments, and that we therefore must arrive at the same conclusion that Judge Graven reached in *3 Parcels of Land;* otherwise, the city is deprived of the revenue to pay the bonds. With this contention we do not agree.

The statute relied on by the Agency and the City, § 40–58–12, reads as follows:

40–58–12. Property exempt from taxes and from levy and sale by virtue of an execution.—1. All property of a municipality, including funds, owned or held by it for the purposes of this chapter shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall judgment against a municipality be a charge or lien upon such property: Provided, however, that the provisions of this section shall not apply to or limit the right of obligees to pursue any remedies for the enforcement of any pledge or lien given pursuant to this chapter by a municipality on its rents, fees, grants or revenues from urban renewal projects.

2. The property of a municipality, acquired or held for the purposes of this chapter, is declared to be public property used for essential public and governmental purposes and such property shall be exempt from all taxes of the municipality, the county, the state or any political subdivision thereof: Provided, that such tax exemption shall terminate when the municipality sells, leases or otherwise disposes of such property in an urban renewal area to a purchaser or lessee which is not a public body entitled to tax exemption with respect to such property. [The chapter referred to is the Urban Renewal Law.]

North Dakota Century Code.

It will be noted from a study of the statute that urban renewal property is "exempt from all taxes of the municipality, the county, the state or any political subdivision thereof." Had the legislature intended that the urban renewal property be exempt from special assessments, the usual language to accomplish that would have been "all taxes *and special assessments.*" The failure to make reference to special assessments, we believe, was intentional.

Our view is supported by the fact that the legislature, in discussing the powers given to an urban renewal agency under § 40–58–07(8), empowered the agency to "levy taxes and assessments."

Section 40–23–07 further supports our view. The pertinent part of that section reads as follows:

40–23–07. Regulations governing determination of special assessments by commission—Political subdivisions not exempt.—* * * Benefited property belonging to counties, cities, villages, school districts, park districts, and townships, shall not be exempt from such assessment, and such public corporations whose property is so assessed shall provide for the payment of such assessments, installments thereof and interest thereon, by the levy of taxes according to law. * * *

North Dakota Century Code.

Although urban renewal agencies are not specifically mentioned therein, cities are, and their property is made specifically not exempt from special assessments.

Accordingly, we conclude that the orders of the trial court must be reversed.

TEIGEN, C. J., and KNUDSON and STRUTZ, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of these cases, did not participate.