# H. B. FRYBERGER v. INLAND STEEL COMPANY.[1]

March 23, 1928.

No. 26,124.

**Assignment of state mineral lease to defendant required it to pay royalty tax on additional royalties reserved to lessee by his assignment.**
A mineral lease of lands belonging to the state imposed upon the lessee the duty to pay all taxes, general and special, in all respects as if the land were owned by him in fee. He assigned his leasehold, reserving to himself additional royalties upon which a law passed subsequent to both lease and assignment imposed a royalty tax. The assignment put upon the assignee the duty to perform all the covenants of the lessee. *Held* that the obligation was thereby imposed upon the assignee to pay the royalty tax upon the additional royalties reserved by the lessee.

Mines and Minerals, 40 C. J. p. 1043 n. 78.

Plaintiff appealed from an order of the district court for St. Louis county, Kenny, J. sustaining a demurrer to his complaint. Reversed.

*Fryberger, Fulton, Hoshour & Boyle,* for appellant.

*Abbott, MacPherran, Dancer, Gilbert & Doan, Clarence B. Randall* and *Andrews & Belden,* for respondent.

STONE, J.

Appeal from an order sustaining a general demurrer to the complaint. The case is a companion to Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71, and was originally submitted therewith. In addition to the main issue disposed of by the opinion therein, this case presents a problem peculiar to itself, with respect to which there has been a reargument.

This action differs from the Marble case in that the land involved is owned in fee by the state. Under date of May 14, 1907, a mining lease was issued by the state to George H. Crosby. It was in the form usual for state leases and its term 50 years. It imposed upon

[1]Reported in 218 N. W. 553.

the lessee and "all sublessees and grantees" under and from him the duty to "pay all taxes, general and specific, which may be assessed against said land, and the improvements thereon, and the iron ore product thereof, and any personal property at said mines, in all respects as if said land were owned in fee" by the lessee. January 3, 1911, Crosby assigned and quitclaimed to defendant his entire leasehold estate. The royalty reserved by the state was 25 cents a ton. By its assignment from Crosby defendant was obligated to pay all sums due the state and an additional royalty to Crosby of 35 cents per ton on all iron ore mined and removed from the demised premises. Its assignment from Crosby also put upon defendant and its assigns the obligation "that as long as it holds said lease [from the state] and said leasehold estate it will observe and perform all the covenants and conditions imposed upon the lessee therein, including the payment of all royalties."

Plaintiff is an assignee of a part of Crosby's right to the additional royalties reserved by the latter from defendant. He has been required to pay the royalty tax thereon under L. 1923, p. 258, c. 226. The purpose of this action is to recover from defendant, as the assignee of Crosby, the tax so imposed upon plaintiff's share of the additional royalties. The complaint and demurrer present the question whether the language we have quoted from the state lease and the assignment thereof to defendant operates, as plaintiff claims, to put upon defendant the duty to pay his royalty tax. It was upon the broader grounds considered in the Marble case that the complaint was held bad on the demurrer. On the precise question just stated and peculiar to this case, the views of the learned trial judge seem to have been in accord with those about to be stated.

The argument for defendant in substance is that, defendant having assumed only the obligations resting upon Crosby under the state's lease, that lease being the source of the only royalty to accrue from Crosby, and royalty to the state not being taxable, the tax paid by this plaintiff upon his additional royalty is in nowise referable either to the original lease or the assignment thereof to defendant. It is an excrescence, so to speak, springing from an extraneous cause. Therefore the conclusion is, plaintiff's royalty tax is not within the

covenants of lease and assignment and defendant is not liable therefor. If the language in question be given a narrowly literal construction, the conclusion suggested is easily reached. But a different view is found pervasive and controlling if its dryly logical aspect be put aside and the problem considered of what effect to give the expressed intention of the parties with respect to a tax not in existence and probably undreamed of when lease and assignment were formulated. As indicated in the Marble case, the purpose of the parties to Minnesota mineral leases and assignments thereof ordinarily has been to pass on, from lessor to lessee and from lessee to sublessee, the entire tax burden, whatever form it may take. In solving such a problem of interpretation, the effort must always be to get into and understand the situation of the parties at the time. In no other way can we make sure of their meaning, unless their language when applied to its subject matter is too plain to require interpretation. The royalty tax was not anticipated in 1907 or 1911 when the contracts controlling this case became effective, but it was understood that methods of taxation might not remain the same. The possibility of taxes additional in burden and new in variety was plainly foreseen. Hence we find even in the state lease a general assumption of "all taxes, general and specific, which may be assessed against said land."

The purpose of that tax assumption clause was made as far-reaching and inclusive as could be. It was to put the lessee in the position, with respect to *all* taxes, of an owner in fee. The state did not purpose to permit its lessee to participate in nor derive any benefit from the immunity of its own property from taxation. Subletting or assignment by the lessee was contemplated and is quite usual. With respect to the incidence of taxes on the leasehold, the lessee was to be dealt with as an owner in fee. So any tax on the resulting interest of Crosby in the demised land was covered by his agreement in the lease to pay all taxes, general or specific, the same as though he had been the owner in fee instead of lessee.

The lease gave Crosby the right to assign or sublet; that is, it created the right out of the exercise of which (by the assignment to defendant) has sprung the reserved interest, the right to the addi-

tional royalty from defendant, which has become the subject of the royalty tax. The lease put in him an estate upon his ownership of which as lessee has been put his additional royalty. The right thereto is an interest in the land which is a direct, natural and foreseen outgrowth of the original leasehold estate. It is not a mere excrescence due to any unnatural or unexpected development. And although the lease from the state may not itself be the source of the lessee's obligation to pay a royalty tax on increased royalties gotten by him through an assignment, it is in a very real sense because of the lease and because he is lessee that he has to pay them; that is, the duty to pay the tax is one which rests upon the lessee as such. If one has gotten an interest in the land or its product which is taxable, solely because he is a lessee and out of his leasehold, it seems clear that the tax is within the category of those chargeable against or payable by the lessee as such. That is enough for present purposes because the assignment from Crosby to defendant put upon the latter the duty to pay all taxes imposed upon the "lessee therein," there being nothing to require also that the obligation to pay be imposed by the lease itself rather than some law. It is enough to make that covenant applicable that the tax is put upon the leasehold or something appurtenant to or carved out of it so that it becomes a duty of the lessee to pay it.

Order reversed.

Holt, J. (dissenting).

I dissent. The only covenant on the part of Crosby with respect to taxes was to pay the taxes as if he were owner. As such he would never be called upon to pay any tax under L. 1923, p. 258, c. 226. Defendant did not directly covenant to pay taxes. It only agreed to step in Crosby's shoes so far as concerned the payment of taxes, and Crosby could never be called upon to pay royalty tax.