STATE, BY J. A. A. BURNQUIST, ATTORNEY GENERAL, v.
BARRETT & ZIMMERMAN, INC. AND OTHERS.
SIMON MEYERS, RESPONDENT.[1]

March 11, 1949.

No. 34,743.

[1]Reported in 36 N. W. (2d) 590.

*J. A. A. Burnquist,* Attorney General, and *Frederick P. Bradford,* Special Assistant Attorney General, for the State.

*Simon Meshbesher* and *Simon Meyers,* for respondent Simon Meyers.

THOMAS GALLAGHER, JUSTICE.

Appeal from a judgment in favor of Simon Meyers on his appeal from an award of commissioners in condemnation proceedings. The proceedings involved condemnation of Meyers' interest in certain lands in southeast Minneapolis acquired in such proceedings by the University of Minnesota in connection with certain housing projects.

The property involved consists of an undivided one-third interest in 65 lots in blocks 1, 2, and 10 of Cole & Weeks' Addition to Minneapolis. Prior to these proceedings, the university had acquired the remaining two-thirds interest therein. Meyers' one-third interest was evidenced by a contract to repurchase it from the state, to which it had been forfeited for nonpayment of taxes. At the time of the commencement of these proceedings, there was a balance of $1,197.81 due on said contract.

The condemnation proceedings were started in 1946. On April 18 of that year, the commissioners made awards to Meyers for his property totaling $4,343.30. On his appeal to the district court, the jury returned a verdict of $5,333.33 in his favor for his undivided one-third interest in the lots described.

After the trial court had made its order for judgment, but before judgment was entered, the state moved for an order reducing the

verdict by an amount equal to certain payments made by the university, one for $146.33 covering 1945 taxes on Meyers' one-third interest in the real estate described, and one covering the balance of $1,197.81 due on Meyers' contract of repurchase with the state.

By affidavits in support of its motion, the university asserted that the two payments described were made on May 1, 1946, and April 30, 1946, respectively. The trial in district court was held, and the jury's verdict was returned over a year later. The university further asserted in such affidavits that the payments were made by it under an oral agreement with Meyers whereby it was to make such payments to stop interest thereon, and that it was thereafter to deduct the amounts thereof from any award ultimately rendered in favor of Meyers. Meyers, by affidavit in opposition to the motion, vigorously denied that any such agreement or understanding had been reached between the university and himself.

The trial court denied said motion on the grounds that (1) the evidence submitted by the university did not accurately establish the amount of such tax payments; (2) the evidence did not establish a binding agreement between Meyers and the university providing for deduction from the verdict of the amounts paid by the university; and (3) the state's payment thereof being purely voluntary and, in effect, having removed the tax lien on Meyers' property prior to the trial in district court, no obligation rested upon Meyers to make restitution thereof to the university.

■ We are of the opinion that the judgment must be affirmed. The repurchase contract was not submitted in evidence at any time. No records from the county offices were presented to establish the exact amount of taxes due, or to support the affidavits submitted by the university which related to taxes on several parcels of land, including the property here involved, but without apportionment of any part thereof to such property. The absence of evidence to establish the state's claim in this connection justified the trial court's adverse finding with respect thereto.

■ Meyers specifically denied entering into an agreement to permit the procedure followed by the university. Based upon the affi-

davits presented, the trial court found that no binding contract had been made with reference thereto. Clearly, such an oral agreement would be within the statute of frauds. See, Weberling v. Bursell, 180 Minn. 283, 230 N. W. 654. The evidence being sufficient to sustain the trial court's findings in this respect, they must be upheld under well-established rules governing fact questions here. In the absence of such an agreement, it follows that the payments made by the university were purely voluntary.

■ It is well settled that taxes on real estate do not constitute a personal obligation of the landowner, and that one voluntarily paying taxes on land owned by another cannot recover from the owner the amount thus paid. This rule is set forth in Weberling v. Bursell, 180 Minn. 285-288, 230 N. W. 655-656, as follows:

"Taxes upon real estate are a charge and lien upon the land in favor of the state but are not a personal obligation of the landowner under our laws. If the taxes are not paid the state may enforce collection by sale of the land but cannot recover any personal money judgment against the landowner. Martin v. Lennon, 19 Minn. 45 (67); Falvey v. Commrs. of Hennepin County, 76 Minn. 257, 79 N. W. 302; Maxwell v. Hatherly, 170 Minn. 27, 211 N. W. 963; Nortmann-Duffke Co. v. Federal C. S. Co. 172 Minn. 567, 216 N. W. 250. It follows that one who voluntarily pays the taxes upon the real property of another cannot recover of the owner the amount so paid, unless by some valid contract or agreement, to which the person making the payment is a party or which he has a right to enforce, the landowner has obligated himself to repay.

"Plaintiff made the payment here in question voluntarily and is not in a position to demand repayment. * * *

* * * * *

"* * * a naked promise by him [the agent of the owners] to repay to plaintiff these taxes, not based upon any legal obligation or even any moral duty owing to plaintiff, could impose no legal liability upon anyone. As to him personally the promise would be within the statute of frauds."

Under these principles, it is clear that no personal obligation rested upon Meyers to refund the taxes thus paid by the university.

■ It is true that had the taxes remained unpaid at the time of the entry of the judgment they would then constitute a lien thereon, since the damages awarded stood in place of the property taken. Eyre v. City of Faribault, 121 Minn. 233, 242, 141 N. W. 170, 173, L. R. A. 1917A, 685, and cases cited; State ex rel. Kafka v. District Court, 128 Minn. 432, 436, 151 N. W. 144, 146; Kafka v. Davidson, 135 Minn. 389, 393, 160 N. W. 1021, 1022; Oronoco School Dist. v. Town of Oronoco, 170 Minn. 49, 52, 212 N. W. 8, 9. However, payment therefor was made and the tax lien discharged long prior to the award of the jury on appeal to the district court. It follows that at the time of the hearing on appeal in district court there existed no tax lien on the property.

■ The state now asserts that, in any event, under the law of restitution, it should be reimbursed for the payments thus made, contending that they were made under an erroneous belief induced by a mistake of fact that it was thereby releasing its own property from the lien. At the trial below, no claim of mistake was presented. On the contrary, it was repeatedly asserted that such payments had been made pursuant to a contract authorizing the same and for their subsequent deduction from the verdict. Such a claim is not consistent with the claim now presented that they were made as the result of a mistake of fact. The principles governing restitution for payments made by mistake are set forth in Restatement, Restitution, § 43, as follows:

"A person who, by payment to a third person, * * * has released another's property from an adverse interest, doing so unintentionally or acting because of an erroneous belief *induced by a mistake of fact that he was thereby * * * releasing property of his own from a lien,* is entitled to restitution from such other of the value of the benefit conferred up to the value of what was given, *unless the other disclaims the transaction."* (Italics supplied.)

Since there is no evidence to support a claim of mistake, it must follow that the authorities cited do not support the state's present claim for restitution. The evidence is clear that the payments were voluntarily made under what the state assumed was a contract covering the same. As a volunteer paying the taxes of Meyers, the state could not make him its debtor so as to require of him restitution for the amounts paid. Weberling v. Bursell, 180 Minn. 283, 230 N. W. 654; Maxwell v. Hatherly, 170 Minn. 27, 211 N. W. 963.

Affirmed.

[1]Reported in 36 N. W. (2d) 530.