INDEPENDENT-CONSOLIDATED SCHOOL DISTRICT NO. 27, MOWER COUNTY, v. LEOTA M. WALDRON AND OTHERS. STATE OF MINNESOTA, APPELLANT.[1]

February 26, 1954.

No. 36,150.

*Wallace C. Sieh,* County Attorney, for the State.

*Catherwood, Hughes & Alderson,* for respondent school district.

[1]Reported in 63 N. W. (2d) 555.

FRANK T. GALLAGHER, JUSTICE.

On November 26, 1952, Independent-Consolidated School District No. 27 of Mower County filed a petition for the condemnation of certain lands in Austin, Minnesota, including the parcel referred to as the Anna Hansen property. The state of Minnesota, which was named as a defendant in the petition, answered, claiming a lien for the 1952 real estate taxes against the award to be made for the Hansen property. These taxes were assessed before the petition was filed but were never paid. Commissioners were appointed to determine the damages resulting from the taking of the land, and their award was filed January 16, 1953, whereupon the school district took the land for school purposes. In June 1953, the district court adjudged:

"* * * The State of Minnesota has no lien upon any award of damages herein for the taking of the Anna Hansen property hereinafter described, for the unpaid 1952 real estate taxes on said property."

The state appeals from that judgment.

The only legal issue raised by the state which we deem it necessary to decide here is whether the state has a lien on the award money in the condemnation proceedings for the real estate taxes due on the land taken. It is our opinion that it does not.

Title passes to the condemnor in eminent domain proceedings when the award is paid or secured, but its passage relates back to the date of the filing of the award. 6 Dunnell, Dig. (3 ed.) § 3016, and cases cited. Since the award involved here was filed January 16, 1953, and the real estate taxes became a lien not later than the first Monday in January 1953, under M. S. A. 272.31, they were a lien on the land when the title passed. However, since title to the land then passed into the hands of the school district, any proceedings to enforce the tax lien against it are void. Foster v. City of Duluth, 120 Minn. 484, 140 N. W. 129, 48 L.R.A.(N.S.) 707. The state concedes that according to our decision in that case all proceedings to assess land for taxes taken after it becomes public property and all proceedings to enforce and collect the tax against

the land are void. It claims here, however, that it does not seek to assess, collect, or enforce the tax against the land but rather against the money award which stands in place of the land. It therefore contends that it has an enforceable lien for real estate taxes on the award money in this case.

It has been stated in an opinion of this court and in an opinion of the circuit court of appeals for the eighth circuit that the state has a lien for unpaid taxes on the award in a condemnation proceeding. See, State, by Burnquist, v. Barrett & Zimmerman, Inc. 228 Minn. 96, 36 N. W. (2d) 590; Drake v. City of St. Paul (8 Cir.) 65 F. (2d) 119. However, the holding in the Burnquist case was that the condemnor was not entitled to a deduction from the judgment against it, in connection with the taking of the land, for payments which it had made to discharge unpaid taxes on the land prior to condemnation, since there was an absence of evidence to show both the amount of the payments and the fact that they had been made pursuant to an agreement with the landowner. In that case, the language with respect to the situation presented by the instant case, in which the taxes remained unpaid when the land was condemned, was obiter dictum in our opinion and not necessary to the decision. Similarly, in the Drake case the city was denied the right to recover the cost of improvements abutting on condemned property from the award made for its condemnation by the federal government, since the proceedings for assessing the cost of the improvements had not proceeded far enough to give the city a lien on the land at the time it was condemned. Again, it appears to us that the language relied on by the state was obiter dictum and unnecessary to the decision. It is our opinion that the language in these opinions on which the state relies suggests a result inconsistent with the policy declared by our legislature.

█ In Minnesota, real estate taxes do not constitute a personal obligation of the landowner but are a lien in favor of the state on the land only. Weberling v. Bursell, 180 Minn. 283, 230 N. W. 654; Maxwell v. Hatherly, 170 Minn. 27, 211 N. W. 963. The duration and extent of such a lien is controlled exclusively by statute. Gould v. City of St. Paul, 120 Minn. 172, 139 N. W. 293. Generally, tax

statutes are to be construed strictly against the taxing authority. American Railway Express Co. v. Holm, 169 Minn. 323, 211 N. W. 467; State ex rel. Inter-State Iron Co. v. Armson, 166 Minn. 230, 207 N. W. 727; State ex rel. Western Union Tel. Co. v. Minnesota Tax Comm. 132 Minn. 93, 155 N. W. 1061. The state suggests nothing to indicate that the legislature intended the lien for taxes to extend not only to the land but also to an award made for its condemnation. We conclude that the legislature has in fact indicated that that was not its intention.

M. S. A. 117.12 provides:

"All taxes and assessments imposed upon the property after the filing of the petition [for condemnation] and paid by the owner before payment of the award shall be added to the amount of such award, and with interest thereon shall be paid therewith; and the receipt of the proper officer for such taxes and assessments shall be conclusive, as between the owner and petitioner, of the amount and validity thereof."

It is our opinion that this statute indicates that the landowner is to be relieved of the obligation to pay any taxes imposed after the condemnation petition is filed. Clearly, the statute refers only to taxes which have been paid by the owner prior to the payment of the award. However, to hold that, if the landowner fails to pay the taxes before payment of the award, they constitute a lien on the award would hinge the ultimate responsibility for the taxes upon the time when the landowner pays them. If paid before the payment of the award, they are to be refunded by means of adding them to the amount of the award. It appears absurd to hold that, if not paid by that time, they are to be deducted from the award. We find nothing in our statutes to require such a result. See, Opinion Attorney General, No. 474-E-1, January 26, 1931; Collector of Taxes of City of Boston v. Revere Building, Inc. 276 Mass. 576, 177 N. E. 577, 79 A. L. R. 112.

■ We proceed then to consider whether the 1952 real estate taxes were imposed after the filing of the petition here within the terms of § 117.12. In the view we have taken, this depends in part

upon the date the 1952 real estate taxes became a lien on the land. M. S. A. 272.31 provides:

"The taxes assessed upon real property shall be a perpetual lien thereon, and on all structures and standing timber thereon and on all minerals therein, from and including May first in the year in which they are levied, until they are paid; but, as between grantor and grantee, such lien shall not attach until the first Monday of January of the year next thereafter."

If the condemnation proceeding created a grantor-grantee relationship, the taxes in question as between the grantor and the grantee did not become a lien until the first Monday in January 1953. Obviously, certain characteristics of a condemnation proceeding distinguish it from a conventional sale giving rise to a grantor-grantee relationship. See, State, by Burnquist, v. Flach, 213 Minn. 353, 6 N. W. (2d) 805. It is not a transfer based on the consent of the transferor, and the proceedings result in a new title rather than one derived from that of the grantor. In re Improvement of Third Street, 178 Minn. 552, 228 N. W. 162. Nevertheless, this court, as well as a number of others (see, 1 Nichols, Eminent Domain [3 ed.] § 1.142[6]), has on several occasions referred to an eminent domain proceeding as a forced sale.

In State Park Commissioners v. Henry, 38 Minn. 266, 268, 36 N. W. 874, the court stated:

"* * * If the purpose be public, the legislature is to judge of the necessity or propriety of appropriating the land, and, in the exercise of the power of eminent domain, simply obliges the owner to sell, 'and the public is to be considered as an individual treating with an individual for an exchange.'"

In Summers v. Midland Co. 167 Minn. 453, 456, 209 N. W. 323, 324, 46 A. L. R. 816, the court referred to condemnation as a "forced sale," and in Independent School Dist. v. State, 124 Minn. 271, 278, 144 N. W. 960, 962, this court held that condemnation of school land satisfied the constitutional requirement that such land shall not be sold "otherwise than at public sale."

The correct rule appears to be stated at 1 Nichols, Eminent Domain (3 ed.) § 1.142[8]. After recognizing the existence of disagreement about the nature of eminent domain proceedings, the author states:

"* * * The theory of compulsory sale has been employed in recent years, * * * in cases where the rights of individuals, as between themselves, are dependent upon a vendor-vendee relationship between the owner and the condemnor."

Under statutes of other states in which time of attachment of tax liens depends on the existence of a grantor-grantee relationship, such a relationship was found to exist between a devisor and a devisee (Commr. of Int. Rev. v. Plestcheeff [9 Cir.] 100 F. [2d] 62) and between the assignee for benefit of creditors of the landowner and one to whom he conveyed the land. Carey v. Foster, 7 Wyo. 216, 51 P. 206. In construing a statute almost identical with M. S. A. 272.31, the supreme court of Washington held that the condemnation of land did create a grantor-grantee relationship between the condemnor and the owner. Bethany Presbyterian Church v. City of Seattle, 154 Wash. 529, 282 P. 922. We are in accord with this result and hold that such a relationship existed here for the purpose of determining when the 1952 real estate taxes became a lien on the Anna Hansen property.

■ This interpretation of § 272.31 requires the conclusion that the taxes in question as between the grantor and the grantee did not become a lien on the land until the first Monday in January 1953. Real estate taxes also become payable on that date (§ 276.01; Hoyt v. Chapin, 85 Minn. 524, 89 N. W. 850), and there is no provision for their payment at an earlier time. Opinion Attorney General, No. 817-F, January 14, 1953. The apparent purpose of § 117.12, quoted earlier, is to establish the rights of the parties in the event of the payment of the tax. In view of this purpose, it appears unlikely that the taxes would be "imposed," within the meaning of that term intended by the legislature, at a time when they were neither payable nor a lien on the land. We therefore conclude that as between the grantor and the grantee the taxes

here were imposed after the filing of the petition on November 26, 1952; that in such a case the legislature intended that they should not be borne by the landowner; and that for that reason they do not constitute a lien on the award made for taking the land.

The judgment of the district court is affirmed.

Affirmed.

MR. JUSTICE NELSON took no part in the consideration or decision of this case.