# STATE v. RHUDE AND FRYBERGER AND OTHERS.

123 N. W. (2d) 196.

June 28, 1963—No. 38,679.

*Robins, Davis & Lyons, S. Robins,* and *Stanley E. Karon,* for appellants.

*Walter F. Mondale,* Attorney General, *Frank J. Murray,* Deputy Attorney General, and *Gordon C. Moosbrugger,* Special Assistant Attorney General, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying a motion for amended findings of fact, conclusions of law, and order for judgment or, in the alternative, for a new trial.

The case arises out of a mining lease entered into between the State of Minnesota and the copartnership of Rhude and Fryberger on May 13, 1952. The lease is drawn in accordance with the provisions of Minn. St. 1949, § 93.20, as amended by L. 1951, c. 616. It purports to lease for a period of 50 years the following described land in Itasca County, to wit: SW 1/4 NW 1/4 and SE 1/4 NW 1/4 sec. 24, T. 57 N., R. 22 W.

As far as the terms of the lease have a bearing on the issues presented here, all that needs to be said is that the property was leased to the partnership for the purpose of "exploring for, mining, taking out and removing the iron ore found on or in said land," together with the right to construct facilities necessary or suitable for such purpose. The lease required payment of minimum rentals and royalties, which royalties were to be computed on the basis of an agreed formula.

The crucial portion of the lease giving rise to the dispute involved here is paragraph 18, which provides:

*"Lessee To Pay All Taxes.* The party of the second part further covenants and agrees to pay all taxes, general and specific, which may be assessed against said land and the improvements thereon made, used or controlled by said party of the second part, and the iron ore product thereof, and any personal property thereat owned, used, or controlled by the party of the second part *in all respects as if said land was owned in fee by the party of the second part."* (Italics supplied in part.)

This provision is in the same language as prescribed by § 93.20, subd. 27.

Either party had a right to terminate the lease. The lessee's right is found in paragraph 24 and reads as follows:

*"Lessee's Right To Terminate Lease.* The party of the second part shall have the right at any time to terminate this lease in so far as it requires the party of the second part to mine ore on said land, or to pay royalty therefor, by delivering written notice of such intention to terminate to the commissioner of conservation, who shall in writing acknowledge receipt of such notice, and this lease shall terminate sixty days after such delivery unless such notice is revoked by the party of the second part by further written notice delivered to the commissioner before the expiration of said sixty days, and all arrearages and sums which shall be due under this lease up to the time of such termination shall be paid upon settlement and adjustment thereof by the party of the second part."

The lessor's right to terminate the lease is found in paragraph 25 and, as far as material here, reads:

*"Lessor's Right To Terminate Lease Upon Default.* This lease is granted upon the express condition that if any sum owing hereunder by the party of the second part for rental, royalty, taxes, or otherwise shall remain unpaid after the expiration of sixty days from the time when the same became payable as herein provided, * * * or in case the party of the second part shall fail to perform any of the covenants or conditions herein expressed to be performed by said party of the second part, then it shall be the duty of the commissioner of conservation to cancel this lease, first having mailed or delivered to the party of the second part at least twenty days notice in writing thereof, whereupon this lease shall terminate at the expiration of said twenty days, and the party of the first part shall re-enter and again possess said premises as fully as if no lease had been given to the party of the second part, and the party of the second part and all persons claiming under such party shall be wholly excluded therefrom except as hereinafter provided, but such termination and re-entry shall not relieve the party of the second part from any payment or other liability thereupon or theretofore incurred hereunder."

Paragraph 26 provides that upon termination of the lease the lessee shall have 90 days' time in which to remove equipment, et cetera.

These provisions likewise are taken from § 93.20, as amended.

In accordance with the termination provisions, the lessee terminated the lease by serving notice upon the commissioner of conservation on April 15, 1954. Upon receipt of the required notice, the lessor wrote a letter to the lessee under date of April 28, 1954, over the signature of the director, Division of Lands and Minerals, Department of Conservation, stating:

"* * * The termination of this lease will become effective sixty days after the receipt of your notice, or on June 16, 1954.

"We wish to advise that the amount of royalty due under this lease for the second quarter, to the date of termination is $1057.69.

"The formal receipt and acceptance by the Commissioner of Conservation of your notice to surrender this lease will be forwarded to you after we have received your check for the above amount of royalty which is due to and including June 16, 1954."

It is admitted that the lessee paid accrued rental by check dated June 15, 1954.

On May 1, 1953, ad valorem taxes were assessed against the land covered by the lease in the sum of $11,782.89, and on May 1, 1954, ad valorem taxes were assessed against the land covered by the lease in the sum of $12,426.41.

On July 3, 1957, the State of Minnesota, through its Department of Conservation, filed a claim in the Probate Court of St. Louis County against the estate of Robert M. Fryberger, a former partner of Rhude and Fryberger, the lessee defendant, for the amount of the ad valorem taxes assessed against said premises and interest and penalties. The probate court denied the claim. An appeal to the District Court of St. Louis County was consolidated with an action commenced August 28, 1958, by the state against the copartnership and against J. O. Rhude, the surviving partner, for the same taxes, with interest and penalties, as were included in the claim against the estate. The district court held that the claim was a valid obligation of the estate and the surviving partner and ordered judgment against them. This appeal raises the question whether ad valorem taxes assessed against the leasehold interest of state-owned land under such mining contract constitute a personal

obligation of the lessee. It is the contention of the state that under paragraph 18 of the lease and the corresponding provision of § 93.20, as amended, the lessee personally agreed to pay ad valorem taxes assessed against the land during the continuance of the lease.

At the outset it must be apparent that the agreement to pay taxes is limited by the language of the lease and the statute. The lease must be read as an entirety. The agreement is to "pay all taxes, general and specific, which may be assessed against said land * * * *in all respects as if said land was owned in fee by the party of the second part.*" (Italics supplied.) It is only by ignoring the italicized portion above that the position of the state would be tenable. When it is given effect, the question becomes: What is the obligation of an owner of land in fee to assume personal liability for the payment of ad valorem taxes against his land?

While the question has arisen in a variety of types of cases, we have from the beginning consistently adhered to the rule that ad valorem taxes assessed against real estate are a charge against the land and do not create a personal liability on the part of the landowner.

In the early case of Martin v. Lennon, 19 Minn. 45 at 52 (67 at 78), we said:

"* * * in one sense, it may be said that this was a tax which the owner *ought* to have paid, for, as a good citizen, he ought to pay his taxes at the day appointed. He incurs no personal liability to the state, however, by letting his land go to sale. The taxes are a charge on the land merely, which land he may lose by persistent delinquency; but that is a matter between himself and his own pocket. It is not in the sense of any such *moral* obligation as that of the citizen above mentioned that the statute uses the expression 'ought to pay.' The relation between the occupant and the owner must be such as to raise an obligation, as between them, on such owner's part, to pay such tax."

In Washburn v. Gregory Co. 125 Minn. 491, 493, 147 N. W. 706, 707, L. R. A. 1916D, 304, we quote with approval from Ballard v. Hunter, 204 U. S. 241, 258, 27 S. Ct. 261, 267, 51 L. ed. 461, 473, as follows:

"* * * As stated in the Ballard case [p. 258] with reference to the statutes of Arkansas, our statutes 'virtually make the land a party to the suit to collect the taxes. It is from the lands alone, and not from their owner, that the taxes are to be satisfied.' "

In Weberling v. Bursell, 180 Minn. 283, 285, 230 N. W. 654, 655, we said:

"Taxes upon real estate are a charge and lien upon the land in favor of the state but are not a personal obligation of the landowner under our laws. If the taxes are not paid the state may enforce collection by sale of the land but cannot recover any personal money judgment against the landowner."[1]

In State ex rel. Vossen v. Eberhard, 90 Minn. 120, 123, 95 N. W. 1115, 1116, we point out the difference between the liability for taxes assessed against personal property and that assessed against real estate. We there said:

"* * * The proceeding for the collection of taxes upon personal property is one in personam, and not in rem. This radical distinction must be kept in mind: In the one case the tax is against the person, although estimated in amount according to the value of the personal property possessed, and is never a lien upon the property assessed; in the other the tax is against the land, and becomes a lien thereon, but is never made a personal obligation against the owner."[2]

The extent to which we have gone in holding that there is no personal liability for the payment of ad valorem taxes against real estate is aptly

---

[1]See, also, State v. Board of Education, 133 Minn. 386, 158 N. W. 635, L. R. A. 1916F, 861; Falvey v. Board of County Commrs. 76 Minn. 257, 79 N. W. 302; Maxwell v. Hatherly, 170 Minn. 27, 211 N. W. 963; Nortmanr-Duffke Co. v. Federal Crushed Stone Co. 172 Minn. 567, 216 N. W. 250; State, by Burnquist, v. Barrett & Zimmerman, Inc. 228 Minn. 96, 36 N. W. (2d) 590; Land O'Lakes Dairy Co. v. County of Wadena, 229 Minn. 263, 39 N. W. (2d) 164, affirmed, 338 U. S. 897, 70 S. Ct. 251, 94 L. ed. 552, rehearing denied, 338 U. S. 945, 70 S. Ct. 428, 94 L. ed. 583; 18 Dunnell, Dig. (3 ed.) § 9281.

[2]See, also, Land O'Lakes Dairy Co. v. County of Wadena, *supra.*

illustrated in Independent-Consol. School Dist. No. 27 v. Waldron, 241 Minn. 326, 63 N. W. (2d) 555. In that case it was contended that the state's lien for real estate taxes could be collected out of an award in condemnation proceedings on the theory that the award stood in place of the land. We held to the contrary, saying (241 Minn. 328, 63 N. W. [2d] 558):

"In Minnesota, real estate taxes do not constitute a personal obligation of the landowner but are a lien in favor of the state on the land only. * * * The duration and extent of such a lien is controlled exclusively by statute. * * * Generally, tax statutes are to be construed strictly against the taxing authority. * * * The state suggests nothing to indicate that the legislature intended the lien for taxes to extend not only to the land but also to an award made for its condemnation. We conclude that the legislature has in fact indicated that that was not its intention."

The right to assess ad valorem taxes against the leasehold interest of land owned by the state was derived from Minn. St. 1957, § 273.19, which, at the times involved here, read as follows:

"Property held under a lease for a term of three or more years, or under a contract for the purchase thereof, when the property belongs to the state, or to any religious, scientific, or benevolent society or institution, incorporated or unincorporated, or to any railroad company or other corporation whose property is not taxed in the same manner as other property, or when the property is school or other state lands, shall be considered, for all purposes of taxation, as the property of the person so holding the same."[3]

It must be apparent that the intention of the legislature under this statutory provision was to place the leasehold interest of state-owned land on a par with land privately owned. There is no indication anywhere in the statute that the holder of such interest should assume an obligation for the payment of such taxes far greater than that of a fee owner, nor have we ever so held.

It is probably true that if the state had chosen to do so it could have

---

[3]The statute was amended by Ex. Sess. L. 1959, c. 1, § 2.

made the assumption of personal liability for taxes an obligation of the lessee. As a matter of fact, Ex. Sess. L. 1959, c. 1, § 1, which is inapplicable here, amended Minn. St. 1957, § 272.01, to do that very thing as to future leases of state-owned land. Minn. St. 272.01, subd. 2, now provides:

"When any real or personal property which for any reason is exempt from ad valorem taxes, and taxes in lieu thereof, is leased, loaned, or otherwise made available and used by a private individual, association or corporation in connection with a business conducted for profit; * * * there shall be imposed a tax, for the privilege of so using or possessing such real or personal property, in the same amount and to the same extent as though the lessee or user was the owner of such property. Taxes imposed by this subdivision shall be due and payable as in the case of personal property taxes and such taxes shall be assessed to such lessees or users of real or personal property in the same manner as taxes assessed to owners of real or personal property, except that such taxes shall not become a lien against the property. *When due, such taxes shall constitute a debt due from the lessee or user to the state, township, city, village, county and school district for which the taxes were assessed and shall be collected in the same manner as personal property taxes.*" (Italics supplied.)

It is argued by the state that, unless the contract is so construed as to make the obligation to pay ad valorem taxes a personal liability, the state has no remedy by which to collect these taxes. The fallacy of this argument is that it ignores the fact that the state has a more expeditious remedy in this situation than it has to collect real estate taxes assessed against property owned by a private individual. Under the terms of the lease itself, if the taxes remain unpaid for 60 days, it is the obligation of the state to cancel the lease and take its land back. In that case it reacquires possession of its land much more quickly than it could acquire privately owned land by tax-forfeiture proceedings. The remedy of the state in a case of this kind was discussed in In re Petition of S. R. A., Inc. 213 Minn. 487, 497, 7 N. W. (2d) 484, 489, where we said:

"* * * If there be tax default where no one is willing to take over the

tax interests of the state, the practice is to cancel the contract. If it be land owned by the state, all taxes are cancelled and the land reappraised and sold anew."

Some reliance has been placed on the case of Chun King Sales, Inc. v. County of St. Louis, 256 Minn. 375, 98 N. W. (2d) 194. That case did not deal with the question involved here. Inferentially at least, we recognized in that case too that the tax liability was not a personal obligation of the landowner or lessee. What we did hold was that the leasehold interest could be taxed and that upon sale of the land by the state to the lessee the lien of the tax continued with the land.[4]

Both parties discuss Fryberger v. Inland Steel Co. 174 Minn. 139, 218 N. W. 553. That case involved a royalty tax, not an ad valorem tax. However, we did say (174 Minn. 141, 218 N. W. 554):

"The purpose of that tax assumption clause was made as far-reaching and inclusive as could be. *It was to put the lessee in the position, with respect to all taxes, of an owner in fee.* The state did not purpose to permit its lessee to participate in nor derive any benefit from the immunity of its own property from taxation. * * * *With respect to the incidence of taxes on the leasehold, the lessee was to be dealt with as an owner in fee.*" (Italics supplied in part.)

This language can hardly be reconciled with the result sought by the state. Instead, the holder of the leasehold is treated the same as an owner in fee.

It therefore seems plain to us that under the language of the lease and the statute upon which it is based the obligation to pay ad valorem real estate taxes assessed against the property involved here stands on exactly the same footing as the obligation of a fee owner. There being no personal liability on the part of a fee owner to pay such taxes, there is none upon the lessee. There is no ambiguity in this contract, and the lessor, as well as the lessee, ought to be bound by the language chosen by the state in drafting and executing this lease.

In view of our decision on the main issue, it is not necessary to determine other questions raised by the appeal.

---

[4]See dissent by the author of this opinion.

Reversed with instructions to enter judgment for defendants.

MURPHY, JUSTICE (dissenting).

It is my view that the appellants should be required to pay the taxes involved in this action for the good reason that by the express terms of their contract they agreed to pay them. It is my further view that by requiring under the provisions of Minn. St. 93.20, subd. 27,[1] that the lessee of state-owned mining property as a consideration for the lease "pay all taxes, general and specific, which may be assessed against said land * * * in all respects as if said land was owned in fee" by him, the legislature intended that the land so leased should lose its exemption and be placed on the tax rolls to bear its share of the tax burden the same as privately owned land. In my opinion, this provision comprehends that the obligation to pay such taxes is personal on the part of the lessee.

By their brief the appellants concede that by the provisions of Minn. St. 1957, § 273.19,[2] state-owned land under lease for a term of 3 or more years shall be considered the property of the lessee for purposes of taxation. They agree that the undertaking to pay taxes as provided by paragraph 18 of the lease was adopted pursuant to the provisions of Minn. St. 93.20, subd. 27. Notwithstanding the express agreement to pay taxes, they contend that because of the nature of real estate taxes there can be no personal obligation for their payment. They argue that since a fee owner cannot be held personally liable for real estate taxes, neither can they. They cite Chun King Sales, Inc. v. County of St.

___

[1] This provision has not been changed since its amendment by L. 1951, c. 616, § 1.

[2] Minn. St. 1957, § 273.19, provided: "Property held under a lease for a term of three or more years, or under a contract for the purchase thereof, when the property belongs to the state, or to any religious, scientific, or benevolent society or institution, incorporated or unincorporated, or to any railroad company or other corporation whose property is not taxed in the same manner as other property, or when the property is school or other state lands, shall be considered, for all purposes of taxation, as the property of the person so holding the same." This section was amended by Ex. Sess. L. 1959, c. 1, § 2, and now relates only to real property not taxable under the new subd. 2 of Minn. St. 272.01, enacted by Ex. Sess. L. 1959, c. 1, § 1.

Louis, 256 Minn. 375, 380, 98 N. W. (2d) 194, 198, to the effect that—

"Real estate taxes are assessed and enforced against the land itself. They are not charges against the owner of the estate. Proceedings to enforce them are strictly in rem."

They argue that paragraph 18, so far as it requires payment of real estate taxes, creates an ambiguity and that since the lease was prepared by the state it must be construed against it.

The words of paragraph 18 of the contract which are prescribed by § 93.20, subd. 27, clearly provide for the payment of taxes by the lessee. The lessee is to pay "all taxes" assessed against the land "in all respects as if said land was owned in fee" by the tenant. This provision was designed with the object in mind[3] of denying the lessee the benefit of sovereign immunity from taxes.[4] We should further view it in light of the presumption that by requiring the tax assumption clause the legislature did not intend an absurd result and that the legislature intends to favor the public as against private interest.[5] If, as the defendants have ar-

---

[3]Minn. St. 645.16 provides in part: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

\* \* \* \* \*

"(4) The object to be attained."

[4]Fryberger v. Inland Steel Co. 174 Minn. 139, 218 N. W. 553.

[5]§ 645.17 provides: "In ascertaining the intention of the legislature the courts may be guided by the following presumptions:

"(1) The legislature does not intend a result that is absurd, impossible of execution, or unreasonable;

\* \* \* \* \*

"(5) The legislature intends to favor the public interest as against any private interest."

gued, the lessee can have no personal obligation because ad valorem taxes are in rem, there would be no purpose in having the tax assumption clause in the contract. I cannot concede that the legislature was indulging in an idle jest when it required that the tax assumption clause be made a part of state iron mining leases; nor can I agree that the lessee in undertaking to pay all taxes was making an empty promise. By the tax assumption clause the parties were talking about the tax the lessee should be required to pay for the 50-year term on his leasehold interest. How was that tax to be fixed? The tax assumption clause answers that question. It provides that it is to be fixed in an amount equal to the tax on the fee or the whole interest in the land.

The trial court in an able and perceptive memorandum has correctly analyzed the issue. He said:

"These actions are brought by the State of Minnesota, acting in its proprietary capacity, to recover damages for breach of a covenant in an Iron Ore Mining Lease. This covenant is set forth in Paragraph 18 of the lease. The language of Paragraph 18 and of the other provisions of the lease is prescribed by statute, Minnesota Statutes 1949, Section 93.20 as amended by Laws of Minnesota for 1951, Chapter 616 (now M.S.A. Section 93.20). Therefore, in interpreting and construing this lease, the Court is guided by the basic rules of statutory construction, namely, that every law should be construed, if possible, to give effect to all its provisions, and that the legislature intends the entire statute to be effective and certain, and does not intend a result which is unreasonable.

"Applying these rules to this statutory lease, the Court is of the opinion that Paragraph 18 imposes a personal obligation on the lessee who 'covenants and agrees to pay all taxes, general and specific, which may be assessed against said land * * *.'

"First of all, this is the meaning and import of all the language in Paragraph 18 if we ascribe to the words their usual meaning, even after giving due consideration to the words 'in all respects as if said land was owned in fee by the party of the second part.' Furthermore, if the legislature did not intend Paragraph 18 to impose personal liability upon a lessee of State-owned mineral lands for the payment of such taxes, then

Paragraph 18 and the statute which prescribed it were meaningless and of no purpose. The taxes herein were imposed on the property and assessed pursuant to the provisions of M.S.A. 273.19 and M.S.A. 273.01, and not by the statute which created Paragraph 18. It should also be noted that Paragraph 25 of the lease (now M.S.A. 93.20, Subd. 34) provides that if any sum owing by the lessee for rental, royalty or taxes remains unpaid after 60 days, it shall be the duty of the Commissioner of Conservation to cancel the lease. Thus, with the State owning the land, and with the taxes being imposed on the property by M.S.A. 273.19, and with the State's remedy of cancellation of the lease for non-payment of taxes being set forth in Paragraph 25, Paragraph 18 of the lease was entirely unnecessary unless it was for the purpose of imposing on the lessee an obligation in personam for the payment of such taxes. In imposing such obligation in personam, Paragraph 18 was necessary in order to provide a way to recover from lessees the unpaid taxes on State-owned mineral lands, since the usual remedy of foreclosure of tax lien was inapplicable. See also Marble v. Oliver Iron Mining Co., 172 Minn. 26, 215 N. W. 71. In Fryberger v. Inland Steel Co., 174 Minn. 139, 218 N. W. 553, the Court said at page 141:

" 'The purpose of that tax assumption clause was made as far-reaching and inclusive as could be. It was to put the lessee in the position, with respect to all taxes, of an owner in fee. The state did not purpose to permit its lessee to participate in nor derive any benefit from the immunity of its own property from taxation. Subletting or assignment by the lessee was contemplated and is quite usual. With respect to the incidence of taxes on the leasehold, the lessee was to be dealt with as an owner in fee. So any tax on the resulting interest of Crosby in the demised land was covered by his agreement in the lease to pay all taxes, general or specific, the same as though he had been the owner in fee instead of lessee.' "

It seems to me that the determination of the trial court is supported both by reason and authority. When a state enters into a contract in its proprietary capacity as it has done here, its rights and liabilities are the same as those of a private person. Chun King Sales, Inc. v. County

of St. Louis, 256 Minn. 375, 98 N. W. (2d) 194. The parties stand in the same relationship as any private parties to a similar contract. In construing this particular contract we should be guided by the rule expressed in Marble v. Oliver Iron Min. Co. 172 Minn. 263, 264, 215 N. W. 71, where we examined a mining lease which provided: "The lessee further covenants *to pay all taxes* and assessments, ordinary and extraordinary, general and specific, * * *." (Italics supplied.) The lease was between private parties and involved the obligation to pay a royalty tax. The defendant contended that the tax was not a tax upon lands. In paying respect to the general rule of construction that where more than one meaning is permissible, the most favorable to the lessee must prevail, we said (172 Minn. 267, 215 N. W. 72):

"* * * Be that as it may, all [the authorities] are agreed that the true meaning of an instrument like a lease is not to be gathered from some isolated phrase or sentence, but that such phrase or sentence must be considered in connection with the whole writing; that the language used should be interpreted in view of the surrounding circumstances, the situation of the parties, and the object or purpose of the agreement."

The later case of Fryberger v. Inland Steel Co. 174 Minn. 139, 218 N. W. 553, which the trial court referred to in his memorandum, also involved royalty taxes, but grew out of a dispute between a sublessee of a lease of state-owned mineral property and an assignee of royalties reserved by the lessor. We there again pointed out that the royalty tax was a charge against the land and discussed the provision of the lease found in paragraph 18 of the contract before us. That lease also provided that the lessee, sublessees, or grantees, were to (174 Minn. 140, 218 N. W. 554) *"pay all taxes, general and specific,* which may be assessed against said land, * * * in all respects as if said land were owned in fee" by the lessee. (Italics supplied.) In discussing this provision as it applied to royalty tax, we said (174 Minn. 141, 218 N. W. 554):

"* * * As indicated in the Marble case, the purpose of the parties to Minnesota mineral leases and assignments thereof ordinarily has been to pass on, from lessor to lessee and from lessee to sublessee, the entire tax burden, whatever form it may take."

The royalty tax involved in that case was not in effect at the time the state's lease was executed. We held, nevertheless, that under the broad provision of the lease to pay all taxes, general and specific, the lessee had assumed the obligation of the additional tax burden. In considering the purpose of the agreement, and the reason for it, we made this significant statement which cannot be overlooked:

"* * * The state did not purpose to permit its lessee to participate in nor derive any benefit from the immunity of its own property from taxation."

Yet that is precisely what the majority opinion will permit the lessee to do.

In the Fryberger case this court went on to state (174 Minn. 141, 218 N. W. 554):

"* * * With respect to the incidence of taxes on the leasehold, the lessee was to be dealt with as an owner in fee."

The majority concludes from this statement that "the holder of the leasehold is treated the same as an owner in fee" who has no personal liability. It is at this point that we come to the crux of the controversy. In referring to the incidence of the tax, the court in the Fryberger case did not have in mind a statutory impediment to in personam duty or the consequential aspects of tax liability. It seems to me that the majority overlooks the fact that the court was talking about "the incidence of taxes on the leasehold," or the burden of the tax which should fall upon the owner of the leasehold. The court was discussing the extent of the tax obligation assumed under the terms of the contract and in explaining the extent of that liability pointed out that the burden of tax upon the leasehold or "chattel real," as the interest is referred to in the Marble case, was the same in kind and amount as if he were the owner in fee. By this decision the court said that the burden of tax which the lessee was to pay was to be measured not by the value of the leasehold or lesser possessory interest but by the value of the whole interest in the land. In other words the term "as if said land was owned in fee" defines the kind and scope of taxes which the lessee is personally obligated to pay. The lone dissent in the Fryberger case did not agree with what

the majority had said and expressed the point of view which the majority has here adopted. The dissent recites (174 Minn. 142, 218 N. W. 555):

"The only covenant on the part of [the lessee] with respect to taxes was to pay the taxes as if he were owner. As such he would never be called upon to pay any tax under L. 1923, p. 258, c. 226. Defendant [assignee of the lessee] did not directly covenant to pay taxes. It only agreed to step in [the lessee's] shoes so far as concerned the payment of taxes, and [the lessee] could never be called upon to pay royalty tax."

It seems to me that the trial court has so clearly analyzed this issue in that part of its quoted memorandum that to further labor the point would be carrying coals to Newcastle. However, the consequences of the majority opinion as it may relate to leases of other state-owned mining properties are of such importance as to warrant further comment.

While it is true that real estate taxes are a charge against the land, that fact does not prevent a lessee from entering into a valid undertaking with the owner to pay such taxes. It must be acknowledged that the agreement by a lessee to pay real estate and other taxes is a common provision to be found in leases. If the obligation to pay taxes in a leasing agreement between private parties may be enforceable, there is no good reason why the same provision should not be enforceable in a contract in which the state is the lessor. Both Minn. St. 1957, § 273.19, and Minn. St. 93.20, subd. 27, express the policy that when state-owned lands are appropriated to private use, the exemption from taxation no longer applies.[6] It must be recognized that the legislature was aware of the fact that real property taxes lie at the foundation of the tax structure of the state. The tax is levied annually at a regular time and operates uniformly according to fixed statutory rules. That this tax be fully collected is of vital importance to the various units of government among which it must be distributed. By requiring under the provisions of

---

[6]Minn. Const. art. 9, § 1, provides that public property used 'exclusively for any public purpose shall be exempt from taxation. That exemption does not apply to public property used for private purposes. Chun King Sales, Inc. v. County of St. Louis, 256 Minn. 375, 98 N. W. (2d) 194.

§ 93.20, subd. 27, that the lessee of an iron mining lease as part of the consideration for the lease "pay all taxes, general and specific, which may be assessed against said land," the legislature intended that the land so leased should lose its exemption, be placed on the tax rolls, and bear its share of the tax burden the same as privately owned land. It seems to me that nothing could be more reasonable than to require an undertaking which would secure the certain payment of taxes on state-owned land given over to private use. Since there would be no point in the state's collection of delinquent taxes against its own property by in rem proceedings, the obvious method to insure the certain collection of such taxes was for the legislature to provide as it did by § 93.20, subd. 27, that the lessee assume that obligation. If this does not mean that the obligation is personal on the part of the lessees, it means nothing.

The majority opinion relies on the language of § 272.01 as an aid to the result it has reached in construing § 93.20, subd. 27. It is only necessary to observe that the purpose of § 272.01 was to bring certain property which was formerly exempt from taxes within the class of taxable property. It extends the principle of liability for payment of taxes to a new class of subjects. This does not imply in any way that the principle was not already established as respects of leases of state-owned iron mines. For the foregoing reasons, I respectfully dissent.

OTIS, JUSTICE (dissenting).

I join in the dissenting opinion of Mr. Justice Murphy.