*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0505**

City of Paynesville,
Respondent,

vs.

Greg Rutten, et al.,
Appellants.

**Filed October 20, 2014
Reversed
Stauber, Judge**

Stearns County District Court
File No. 73CV137150

John R. Koch, Sarah R. Jewell, Reichert Wenner, P.A. St. Cloud, Minnesota (for appellants)

William Spooner, Frauenshuh & Spooner, P.A., Paynesville, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from a summary judgment in this special assessment dispute, appellant-LLC members argue that the in rem nature of special assessments precludes personal liability for special assessments against the property and that the district court misconstrued the relevant agreements to unambiguously state that appellants agreed to be

personally liable for special assessments and annual assessment interest against the property. Because the plain language of the agreements does not impose personal liability on appellants for the assessments and interest, we reverse.

**FACTS**

In August 2006, the owners (who were also the developers) of real property that was to be platted as Heatherwood Plat 3, entered into an agreement with respondent City of Paynesville (city) entitled Heatherwood Plat 3 Development Agreement (development agreement), to develop the land within the proposed plat into 32 residential lots. Under the terms of the development agreement, and typical of developments requiring public services, the city agreed to defer assessments and various costs for improvements to the lots in the proposed plat, including the cost of installation of city streets with bituminous surface, curb, gutter, sidewalk, city sewer, city water, storm sewer, and drainage facilities, until a future date or the sale of the lots, whichever occurred first. The developers agreed to pay (1) the assessments against each lot in Heatherwood Plat 3; (2) the parkland dedication fee; and (3) other deferred assessments and fees.

The development agreement was amended in June 2007. Such amendment ("addendum") is not relevant to this controversy. In April, 2010 the developers negotiated with appellants Greg Rutten, Wade Rodenwald, and Rutwald Properties, LLC to sell the unsold lots in Heatherwood Plat 3. But in light of language in the development agreement that deferred assessments until a future date, the city intervened in the negotiations.

2

On April 14, 2010, the city, the developers, and Rutten and Rodenwald, individually, and doing business as Rutwald Properties, LLC, entered into an agreement entitled "Agreement Regarding Transfer of Lots in Heatherwood Plat 3" (transfer agreement). The transfer agreement was drafted by the city. Under the terms of the transfer agreement, the original developers would convey unsold lots in the plat to Rutwald Properties, LLC which would become bound by the terms of the development agreement, and in return the city would not trigger early payment of the special assessments. However, the city also required that interest accrue on the unpaid assessments at a rate of 1.5% per annum, payable on each anniversary date. The transfer agreement further provided that appellants agreed to be bound by the terms of the development agreement as amended by the earlier addendum and as modified in the transfer agreement.

In June 2013, the city commenced this action against appellants alleging that appellants breached the terms of the transfer agreement by failing to pay the interest that had accrued on the special assessments for 2011, 2012, and 2013. Appellants answered, admitting the nonpayment and the amounts, but denying any obligation to pay deferred special assessments or interest on the special assessments. The city subsequently moved for summary judgment arguing that under the plain, unambiguous language of the contracts, appellants are liable for the unpaid assessments and interest.

The district court found that "the contract is not ambiguous on the issue of the personal liability of [appellants] individually" because the "only one reasonable interpretation" of the transfer agreement is that appellants are personally liable. The

district court also found that there are no material facts in dispute. Thus, the district court granted the city's motion for summary judgment. This appeal followed.

**D E C I S I O N**

A district court's grant of summary judgment is reviewed de novo. *Savela v. City of Duluth*, 806 N.W.2d 793, 796 (Minn. 2011). On review, this court determines "whether genuine issues of material fact exist, and whether the district court correctly applied the law." *Id.* We view the record in the light most favorable to the party against whom summary judgment was granted, recognizing that summary judgment is a "blunt instrument" and is improper when reasonable persons may draw different conclusions from the evidence. *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (quotation omitted).

The general rule in Minnesota is that "ad valorem taxes assessed against real estate are a charge against the land and do not create personal liability on the part of the landowner." *State v. Rhude & Fryberger*, 266 Minn. 16, 20, 123 N.W.2d 196, 199 (1963). But this court has recognized, and appellants concede, that "Minnesota law does not preclude a party from contractually agreeing to be personally liable for ad valorem tax assessments." *Baker Investments Ltd. v. City of Minneapolis*, 519 N.W.2d 226, 228 (Minn. App. 1994), *review denied* (Minn. Sept. 28, 1994).

Here, the transfer agreement identifies appellants as the "Buyers." Paragraph 4 of the transfer agreement then amended the development agreement to read as follows:

> The parties hereto agree that the assessments for the installation of municipal improvements including City streets with bituminous surface, curb, gutter, sidewalk, City water,

City sewer, storm sewer, and drainage facilities including a holding pond to accommodate drainage of water and a fence to enclose such holding pond shall be spread evenly over all of the lots in Heatherwood Plat 3, $15,454.46 each. The unpaid assessments shall accrue Interest at a rate of 1 ½% per annum commencing April 16, 2010, which interest will be payable on each one year anniversary thereafter. The principle assessment on each lot sold to the Buyers shall remain deferred until April 16, 2015, or until the date of the sale of the lot, whichever is first. Assessments shall accrue interest at a rate of 8% per annum from the due date.

The transfer agreement also provides that the appellants agreed "to be bound by the terms of [the] Development Agreement as previously amended and as modified in [the transfer agreement]." With respect to assessments, the development agreement provides:

[T]he Developers are willing to pay the assessments against each lot within Heatherwood Plat 3 for the construction of City streets with bituminous surface, curb, gutter sidewalk, the installation of City water, City sewer, storm sewer and drainage facilities including a holding pond to accommodate drainage of water and a fence to enclose such holding pond immediately upon the sale of each lot, all with the understanding that the assessments will be limited to a total of $9,000 plus the $471.66 deferred assessment on Lot 1, Block 1, Heatherwood Plat 3, which shall be paid as set forth herein, and no assessment will apply to Outlots A and B with the remaining assessments to be spread evenly over the remaining 31 lots, except as specifically otherwise stated herein.

The district court found that the "intent of the parties can be determined wholly" from the above referenced provisions, "particularly when the writing[s] [are] taken in [their] entirety." The district court then found that the "only possible parties that Paragraph 4 of the [transfer agreement] could reference as paying the annual 1.5%

5

interest are [appellants]." Thus, the district court concluded that "[t]here is only one reasonable interpretation of the [transfer agreement]: [appellants] are personally liable."

Appellants argue that the district court's decision is erroneous because there is nothing in the plain language of the transfer agreement or the development agreement that confers personal liability for special assessments or interest to appellants. We agree. Despite the multiple references contained in the transfer agreement pertaining to assessments and interest rates, there is no language in the transfer agreement specifically stating that appellants agreed to be personally liable for any outstanding assessments against the properties or affiliated interest. The development agreement lacks any such definitive language as well. Rather than stating that the developers "shall pay to the City," as was the language contained in paragraphs three and five of the development agreement pertaining to a parkland dedication fee and a street lighting charge, the language in the development agreement pertaining to the assessments merely states that the developers are "willing" to pay the assessments against each lot. A "willingness" to pay assessments, does not mandate that the developers pay the assessments. And there is no other language in either the transfer agreement or the development agreement specifically stating that appellants agree to be personally liable as guarantors for assessments and interest.

Because there is no language in the agreements stating that appellants agreed to be personally liable for the assessments and interest, the agreements do not unambiguously confer liability to appellants, and the district court's conclusion to the contrary is erroneous. The city, which drafted the transfer agreement, is essentially a party to the

6

project as it provided the infrastructure knowing the risks of an ever-changing economy and that this is a long-term project with many lots to sell. The city-drafted transfer agreement does not create individual liability against appellants as there is no separate writing or specific language in the agreement which evidences any intent to impose personal liability. Had the city desired to hold Rutten and Rodenwald individually liable for assessments and interest, the city could have incorporated specific language to that effect, or had the individuals execute a personal guaranty separate from the transfer agreement. And the attorney for the city, who drafted the transfer agreement, acknowledged at oral argument that the agreements could have been drafted better. Therefore, we conclude that the district court erred by granting summary judgment in favor of the city on the basis that the agreements unambiguously confer personal liability to appellants for the assessments and interest.

**Reversed.**